VROOMAN et al., v. PENHOLLOW et al.

(Circuit Court of Appeals, Sixth Circuit.    May 4, 1915.)

No. 2588.

PATENTS ⬤⟿321—ACCOUNTING FOR INFRINGEMENT—CONSTRUCTION OF DECREE.
    Two or more defendants cannot be jointly sued for infringement, ex-
cept for acts in which there is some kind of common participation, and
the general language of a decree against joint defendants must be read
with this principle in mind, and not construed to charge one defendant
with liability for infringements by a codefendant with which he had no
connection.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 588, 589; Dec.
Dig. ⬤⟿321.
    Accounting by infringer for profits, see notes to Brickill v. Mayor, etc.,
of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

Appeal from the District Court of the United States for the East-
ern Division of the Northern District of Ohio; William L. Day, Judge.

Suit in equity by Warren F. Vrooman and Arba E. Vrooman against
Grant S. Penhollow, Frank Penhollow, and Wallace L. Baker. From
final decree, after accounting, complainants appeal.    Modified decree
entered.

See, also, 186 Fed. 495, 108 C. C. A. 502.

O. C. Billman, of Cleveland, Ohio, for appellants.

F. A. Henry, of Cleveland, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit
Judges.

DENISON, Circuit Judge.    This court decided (179 Fed. 296, 102
C. C. A. 484) that Vrooman patents Nos. 580,742 and 676,549 were
valid, and that the three defendants (Penhollow Bros. and Baker) in-
fringed.    After our mandate went down, the District Court enter-
ed a decree for injunction and accounting.    Proceedings before the
master, with incidental applications to the District Judge, were long
drawn out.    Eventually the master reported that the damages were
$23.    The report was confirmed, and a final judgment for that amount
entered against all three defendants; but all the costs of the account-
ing, amounting to about $530, were taxed against Vrooman.    From
this decree, Vrooman appeals, claiming error as to both damages and
costs.

It seems that Baker was the only defendant pecuniarily responsible,
and, on the accounting, there was much controversy regarding the char-
acter of his liability as fixed by the opinion of this court and the inter-
locutory decree below.    It was Baker's claim before the master, ac-
cepted by the master and the District Judge, that he had nothing to do
with, and was not liable for, any act of infringement whatever, save
as he might have become liable by the decree for the acts of his code-
fendants Penhollow, but that in these acts he did not participate, and
of them he had no knowledge.    Accordingly, when he was required to

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

file his statement before the master to constitute his accounting of profits and damages, it consisted of an affidavit that he had committed no infringement. Vrooman insisted that Baker, being liable by decree for the Penhollow infringements, must file an account showing the doings of the Penhollows; and Baker protested his inability to do anything of the kind.

It is clear that the master cannot re-examine questions which have been decided by the court; and so the extent of the former adjudication, as against Baker, is the first thing to determine. The three defendants were brought in by a general allegation that they had infringed. The bill of complaint did not specify as to the character of their relations with each other, nor distinguish their respective individual parts in the infringement. The three joined in one answer, denying validity and denying infringement. The opinion of this court (179 Fed. 308, 102 C. C. A. 484) expressed some doubt as to whether Baker was sufficiently connected with the infringement to justify a suit against him, but concluded that he was. He then made a motion asking that only one-third of the costs should be taxed against him, filing in support thereof in this court an affidavit which, while insisting that he had not personally infringed, set forth that the particular acts of infringement, with which he had been upon his farm and through his son more or less connected, were relatively small in amount, and so he should not be held liable for all the costs. This court thought (186 Fed. 495, 108 C. C. A. 502) that Baker's attitude, when he was sued, had encouraged the others to persist, and had caused the defense to be made, and so had brought about the appeal, and accordingly refused to excuse him from any part of the costs.

The decree entered below thereupon—and properly—adjudged, by the fourth paragraph thereof, "that the defendants, Penhollow and Baker, have infringed upon said letters patent." It is, of course, clear that two or more defendants cannot be jointly sued for infringement, except for acts in which there is some kind of common participation, and that there could rightfully be no injunction decree nor accounting against Penhollow and Baker jointly for the independent acts of Penhollow or the independent acts of Baker. Only in cases like a corporation and its directors, or successive operators of the same business, or changing members of a continuing partnership, has joinder of acts not wholly joint been approved.[1] The general language of the opinion and decree must be read with this principle in mind; and it results that the decree is an adjudication that the Penhollows and Baker had common participation in some act, which was an infringement. Such a finding is satisfied and its necessary force exhausted by application to one infringement act. Jones v. Morehead, 1 Wall. 155, 165, 17 L. Ed. 662. Further than this the decree and the adjudication (except for a paragraph to be considered) do not go. Whatever this act or series of acts may be to which the decree refers, it is,

---

[1] Simonds v. Hathorn (C. C. A. 1) 93 Fed. 958, and cases cited at page 963, 36 C. C. A. 24; Herman v. Youngstown (C. C. A. 6) 216 Fed. 604, at page 610, 132 C. C. A. 608.

as against Baker, adjudged to be of Baker's doing; whatever other things, if any, were done by Penhollow without Baker's participation, or by Baker without Penhollow's participation, are not thereby adjudged to be the acts of the other. Obviously, since neither pleading, opinion, nor decree identifies the acts to which the decree relates and concerning which it creates an adjudication, we must resort to the testimony to make the concrete application.

By referring to the record upon the former appeal, we find that there was testimony tending to show·that one of the Penhollows was engaged in planning or building an infringing machine about 1900; that Vrooman found one or both of the Penhollows using the machine upon the Penhollow farm at some later period, but desisted from bringing suit upon the Penhollows' promise to use the machine only for their own onions; that later it was reported that the Penhollows had built and sold one or more other machines; and that, in September, 1906, the machine, the drawings of which constituted the proof of infringement considered in the case, was found in use by Charles Baker, upon a farm belonging to his father, defendant Wallace Baker; that the latter was present, approving and perhaps directing such use, and that this machine had been purchased by Baker from the Penhollows; also, that the Penhollows were then using another machine topping onions for their neighbors.

This is the sum and substance of all the proof on that subject. There is nothing tending to show that defendant Baker had any connection whatever with any infringement, excepting so far as could be found in the use of this machine on his farm. As to that, there was some degree of common action between the three defendants, and a decree holding them joint participants in this infringement would be supported by the record; but there would obviously be no foundation for a decree that Baker had participated in everything done by the Penhollows. Some years of their activities had passed before Baker appears upon the record at all; and that, after he appeared, he had any part in what the Penhollows did on their own farm, or in what they did for their neighbors, is the merest suspicion. Baker's defiant attitude when he was sued, and his (temporarily successful) efforts to destroy the patent, doubtless encouraged the Penhollows to persist in their infringement, which otherwise they might have dropped. This sort of encouragement may well be controlling in determining a discretionary apportioning of costs; it falls far short of making the defiant defendant a participant in what other infringers did.

So we find that the record describes acts to which the decree of infringement against Baker could not properly apply, and describes other acts to which it might well apply. We must therefore think that the opinion of this court and the decree of the District Court, so far as they hold Wallace Baker guilty of infringement jointly with the Penhollows, were intended to refer to the use of that machine upon the Baker farm, and so constitute an adjudication that such use was by Wallace Baker, and was not exclusively by the son, Charles Baker. Our conclusion that we rightly interpret the real force of the decree is confirmed by the fact that, in the affidavit which defendant Wallace

Baker filed in support of his motion to apportion costs, he obviously regarded the use of the machine upon the Baker farm as the thing of which he had been convicted, and by the further fact that at the opening of the accounting, and when no one except the elder Baker and Penhollows had been called upon to account, the younger Baker filed with the master a statement purporting to show the work of this and another similar machine on this farm for the four years 1906, 1907, 1908, and 1909, covering 10,431 bushels, and paid into court $104.31, the royalty at the agreed rate for the amount of infringement which his statement showed.

Nor is the conclusion that Wallace Baker was thus adjudged to be an actor in the use of this machine modified by the fifth clause of the decree below, which directed "that the complainants recover of the defendants and each of them any and all damages which the said complainants have sustained or shall sustain by reason of said infringement by the said defendants or any of them." This has been treated by the parties as an express decree that Baker must pay the damages for any infringements which the Penhollows had committed. Its language makes it open to—and perhaps requires—that construction. If so, its entry, to that extent, was inadvertent for the reasons we have pointed out; but it was not modified or appealed from, it became final, and it must be enforced according to its terms. We see no sufficient reason to disapprove the construction which the parties all place upon it; but it does not purport to be a finding of what the parties have done. It purports only to fix a liability. If it stood alone, it might support an inference of underlying findings of facts broader than those we have found here appear, and to the effect that Baker had participated in everything; not so, when it is to be considered in connection with other paragraphs of the decree and with the testimony.

We have referred to paragraph 4 of the decree as an "adjudication." This is not a very accurate use of the word, since such a decree is classified as interlocutory; but, in so far as it was pursuant to our mandate (as this paragraph was), it was not subject to change by the trial court. Bissell v. Goshen (C. C. A. 6) 72 Fed. 545, 19 C. C. A. 25. It therefore seems the full equivalent of a more formal adjudication.

The accounting, therefore, opened on the basis, not only of a declared liability against Baker for what the Penhollows had done, but also of an adjudication that the use of this machine upon the Baker farm in 1906 was a use by defendant Baker; and we think the force of the finding ultimately extends to what was done in later seasons by this and the later machine. The ownership of the farm, the mutual relation of the two Bakers, and the title to machines and to onions were the same in later seasons as in 1906. For what defendant Baker had done he should have filed a complete statement. He could not be required to do this, as the master properly held, for what the Penhollows had done. The duty as to a statement of infringement on the Baker farm was met in substance, though not in form, by the statement filed by the son. Vrooman was thereupon entitled to an investigation

222 F.—57

as to whether the statement was full and complete, as well as regarding the Penhollows' conduct. The ensuing testimony tended to show that Frank Penhollow made a machine in 1902 which he used one season topping onions on his own farm; that he then dismantled this, and in 1903 and 1904 built two more machines, which he used on his own farm only, and which were both burned in 1904. There was nothing to show the number of bushels treated by these machines, excepting his estimate of 1,000 bushels. In 1905 and 1906, he built two more machines for his brother Grant. One of these Grant sold to the younger Baker in 1906, and the other, after using it on his own onions (estimated 800 bushels), he sold in 1907 to Wallace Baker. At about the same time, or a little later, Frank Penhollow built two more machines. One became the property of Pangborn, who used it to an extent not disclosed, and the other was used by Frank Penhollow topping onions for neighboring farmers to some extent in the next two or three seasons.

There was nothing received in evidence tending to show use upon the Baker farm to a greater extent than shown by Charles P. Baker's statement. As the hearing progressed, both parties misapprehended their respective rights. Baker was at fault in not adopting the responsibility for the use of the machines on his farm; Vrooman was at fault in trying to compel Baker to disclose the particulars of Penhollows' infringement about which Baker was ignorant. Thus little progress was made until Baker, who had been conducting his own case before the master, employed counsel. Pursuant to his counsel's advice, he thereupon formally offered to pay the amount of royalty disclosed by his son's statement, and all the accrued costs to that date. As it turns out, this offer failed to meet the full measure of Baker's liability in two particulars: It did not include interest—some $30—on the royalties shown by the son's statement, computed from each year when they should have been paid, and it did not include the $23 ultimately found, and which then appeared as definitely as it ever did, on account of the Penhollows' infringement. Neither one of these items is very substantial. It seems rather probable that both would have been included, if attention had been called to their omission; but they were not included, and they were not, under these circumstances, negligible. Plaintiffs rejected the offer, not for these reasons, but because it did not include some large sums on account of the extensive infringements which it was vaguely claimed the Penhollows had committed; but plaintiffs failed to make good this larger and vaguer claim. We think it must be held that up to the time of the offer Baker was so substantially in fault that he should have paid all costs so far accrued, but that, after that time, the parties were equally in the wrong and each should pay his own costs.

We are aware that there can be no hard and fast rule on this subject, since each case must turn on its own facts, and the whole subject, ordinarily, rests in the discretion of the trial court; but where our action on appeal changes the basis on which the trial court has acted, it is not improper that we should dispose of the whole subject, and we think equity requires the disposition of these costs which we have in-

dicated. There is nothing in the record requiring any larger finding than the master made regarding infringement by the Penhollows. There is some evidence of the number of acres grown by one or the other Penhollow in some of the years involved, but not even estimate of the number of bushels. With regard to the work done for his neighbors, Frank Penhollow could give their names and the years, but no estimate of the amounts, and he had no record. Manifestly this was insufficient as a basis for an accounting of damages. It does not constitute "data." McSherry v. Dowagiac (C. C. A. 6) 160 Fed. 948, 952, 89 C. C. A. 26.

Plaintiffs did not call these named neighborhood farmers as witnesses, but offered copies of certain returns made by them to the assessor of the township, in which, in the course of furnishing statistical information, said to be required by Ohio laws, it was stated that their onion crops had been a certain number of bushels in each year involved. The master refused to accept these copies as evidence tending to show the number of bushels Penhollow had treated with the infringing machine. In this he was right; at the best, they were hearsay. Passing all other objections, our attention is not directed to any applicable statute which would make the original returns evidence against another, even of the number of bushels raised, much less of the number of bushels treated in a particular manner. Even the statements which refer to the Baker farm and purport to show what onion crops Wallace and Charles Baker had returned to the assessor, even if they had been admissible (as for several reasons they were not), could not be of controlling importance, when we observe that it has always been claimed part of the onions were topped by hand, and that both Bakers were upon the stand and subject to as exhaustive examination as desired regarding Charles Baker's statement of 10,431 bushels. It does not appear that any books or papers in control of either of the Bakers, and which could have had any possible bearing on the issue, were not produced by each of them as requested.

There was no foundation for double damages. The trial judge thought there was no infringement, and only by holding that the claims involved should not be construed as narrowly and literally as the court below had done did this court reach the contrary conclusion. Baker cannot well be regarded as intending a willful injury, when the trial court deemed his conduct rightful. There is nothing here to show that Baker withdrew his offer before the master, or would not have carried it out—as of the time of its making—at any time up to final decree. Then, however, he demanded and obtained a decree upon the theory that he had been wholly right from the beginning. This led to the erroneous imposition upon plaintiff of all the costs, including those which had accrued before the tender was made and while Baker had been in the wrong, and so made it necessary to prosecute this appeal.

The record does not permit us to apportion the costs before the master with perfect accuracy on the principle which we think proper; but it is better that trifling errors should be made than that there should

be a further controversy thereon in the court below. Accordingly we have made this apportionment and computed interest upon royalty as well as may be, and direct that the decree below be reversed, and a decree be entered below for the plaintiffs for $175 damages. Of the costs on the accounting, $533.96, the plaintiffs will pay one-fourth and defendants three-fourths. If either has paid more than this, he may have the proper cross-recovery. If the costs of the main case, awarded by the interlocutory decree, have not been disposed of, they should be included in the final decree. Appellants must recover the costs of this appeal, as they have, in the main, prevailed.