## CLARK v. SCHIEBLE TOY & NOVELTY CO.

(Circuit Court of Appeals, Sixth Circuit. December 14, 1917.)

No. 3023.

1. PATENTS ☞319 (1)—ACCOUNTING FOR INFRINGEMENT—APPORTIONMENT OF PROFITS OR DAMAGES.

On an accounting for infringement of a patent for an improvement or of a part of a structure, the ultimate question is whether the real invention and its influence in bringing about the infringing sales can be so far identified as to admit of reasonable apportionment of profits or damages; if it can, the apportionment must be made.

2. PATENTS ☞319(1)—ACCOUNTING FOR INFRINGEMENT—MEASURE OF DAMAGES.

There is no legal presumption that, but for infringement by a defendant, complainant, which was the owner of the patent and manufacturing thereunder, would have made as many sales at the same profit as were made, in a like period before the infringement, when defendant was a partner in the business, and such an assumption is too conjectural to be safely taken as the measure of damages for the infringement.

3. PATENTS ☞312(3)—DAMAGES FOR INFRINGEMENT—REASONABLE ROYALTY.

Complainant was owner of a patent for a power truck frame for locomotive toys, adapted for use with various kinds of vehicle bodies, which patent was infringed by defendant. Both parties were manufacturers and sellers of vehicle toys, on some of which the power truck was used, and others not. Held, that the testimony of the parties themselves, taken on an accounting before a master, as to the prices at which such toys were sold, both with and without the patented truck, afforded a basis for apportionment of profits or damages, and also for establishing a reasonable royalty for the patented device.

4. PATENTS ☞319(1)—INFRINGEMENT—ACCOUNTING FOR DAMAGES.

On an accounting for damages for infringement, each case is controlled at last by its own peculiar facts and circumstances, and the pecuniary loss in any event can be determined only through reasonable approximation.

5. PATENTS ☞324(5)—DAMAGES FOR INFRINGEMENT—INCREASE OF AWARD BY COURT.

The refusal of a trial court to increase the damages awarded against an infringer on an accounting held so far within its discretion that, on the facts shown, it would not be disturbed by the appellate court.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

─────────

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the Schieble Toy & Novelty Company against David P. Clark. From final decree on accounting, defendant appeals. Reversed.

H. A. Toulmin, of Dayton, Ohio, for appellant.

Wm. R. Wood, of Cincinnati, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. Final decree was entered below upon an accounting and report of a master. Three suits were originally brought by appellee against appellant upon three distinct patents; and interlocutory decrees were entered, adjudging that the Clark patent, No. 676,420, contested in the first suit, was valid, though not infringed, and that the Turner patents, Nos. 930,107 and 930,633, involved, respectively, in the second and third suits, were invalid. Upon appeals to this court the interlocutory decree in the first suit was reversed, with direction to enter the usual decree for injunction and accounting, and the decree in each of the other suits was affirmed. The interlocutory appeals were heard here together, and the facts and rulings in respect of them are reported in 217 Fed. 760, 133 C. C. A. 490. The master awarded as damages, instead of profits, the sum of $30,611.70 in the first suit. Exceptions were reserved in behalf of Clark to the master's report, and also to his rulings upon objections to evidence; the exceptions were overruled, and decree was entered, Clark appealing.

The assignments, 24 in all, are in substance and effect involved in the questions we find it necessary to discuss. The record, as counsel interpret it, presents a number of intricate questions, which do not lead to any decisive and satisfactory conclusion, and their contentions also obscure the identity of the infringing device and the value attributable to it in ascertaining either the profits or the damages recoverable. The patent in suit purports to be an improvement upon a previously patented device called in this litigation the Boyer patent. The earlier invention and the later one are each a combination patent; and it is stated in each specification that the invention is an improvement in "locomotive toys." The patents are both described sufficiently in our original opinion. 217 Fed. 764, 766, 133 C. C. A. 490. It may, however, be remarked that unpatented toy bodies, each comprising locomotive boiler, cab, cylinders, and pilot, an automobile or other vehicle body, were mounted on the patented structure, which comprised the operative parts, that is, the running wheels, inertia wheel, idlers, truck frame, etc. Indeed, it was provided in the specification of the patent in suit:

"That the truck frame may serve as a support for any suitable vehicle body or other toy mounted thereon, and this weight in addition to the truck frame and of the inertia wheel and its axle is utilized to increase the efficiency of the contact between said axle and the running wheels."

Appellee (hereafter referred to as complainant) called an expert before the master, who testified in reference to the patented structure in suit:

"I do not find in such toy structures any mechanical basis by which profits- could be apportioned as between patented and unpatented portions of the structure, because from a mechanical standpoint each device stands as an indivisible combination of elements."

Upon a similar theory it is insisted for complainant that toy bodies mounted on the patented structures are themselves elements of the patent, and must be so considered in estimating either profits or damages. It is true that in practice both parties frequently extended the side walls of the toy bodies downwardly, and adapted their lower portions so as to use them as complete equivalents of the truck frame described and shown in the patent specification and drawings and called for in the claims. It is said that the toy body thus constitutes the actuating element of the combination in the sense that the body, instead of the truck frame, affords a convenient handhold for starting the toy, and also that the weight of the body thus becomes effective in producing the wedging contact between the inertia wheel shaft and the rims of the running wheels without friction. Such features as these, however, could neither avoid infringement of the patent in suit nor make the whole toy body a truck frame within the meaning of the patent. In many instances the toy body was fastened to the top of the truck frame, literally mounted upon it, instead of having the side walls extended and in part substituted for the truck frame. Surely a toy body so connected with the truck frame does not become an element of the patent; nor does the extension method of connecting the toy body with the patented device in any material sense efface the truck frame proper; the added weight and the starting facilities are the same, regardless of the method of connection. Further, the toy bodies in question were specifically described and claimed in the Turner patents; and the present complainant, as assignee of Turner, relied on those patents to prevent Clark's use of the toy bodies; but both this court and the court below held the Turner patents invalid. 217 Fed. 772, 133 C. C. A. 490. Is it to be said now that the right to use the toy bodies as patented articles resides exclusively in complainant simply because they were either mounted on the present patented device or were in the lower portions of their side walls made to infringe it?

[1] Another contention made for complainant is that if the body, as distinguished from the truck frame or its equivalent, is not part of the patent in suit, the act of Clark in connecting the bodies with the infringed device was to unite the parts so as to prevent ascertainment of the value to be attributed to either of the parts in estimating profits or damages, and consequently that the rule of confusion of goods must be applied. If this is a true interpretation of the record, it may be conceded, as counsel claim, that such decisions as Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, and Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398, are applicable; but we are not satisfied with this view of the record. The ultimate inquiry in all such cases is whether the real invention and its influence

in bringing about the infringing sales can be so far identified as to admit of reasonable apportionment of profits or damages; if this can be answered affirmatively, the long-settled rule is that apportionment must be made. Garretson v. Clark, 111 U. S. 120, 121, 4 Sup. Ct. 291, 28 L. Ed. 371; Westinghouse Co. v. Wagner Mfg. Co., supra, 225 U. S. 614, 615, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Hamilton Shoe Co. v. Wolf Brothers, 240 U. S. 251, 260, 261, 36 Sup. Ct. 269, 60 L. Ed. 629. This results from the rule that, while the owner of an infringed patent, as well as the owner of any other kind of property tortiously taken and used, is entitled to be recompensed for the injury so committed (section 4921, U. S. Rev. Stat.; Westinghouse Co. v. Wagner Mfg. Co., supra, 225 U. S. at page 615, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; United States Frumentum Co. v. Lauhoff, 216 Fed. 610, 615, 132 C. C. A. 614 [C. C. A. 6]), yet, apart from acts that would charge the infringer or other tort-feasor as a trustee ex maleficio, of course no owner can be suffered to recover anything in respect of property which does not belong to him or as to the use of which he has no rightful control.

[2] How, then, may the amount complainant should recover be rightly estimated? The infringement extended over a period of about four years. The master found that during this period the profits earned by Clark through his sales of infringing toys were $22,748.13; but the profits so found include those derived from sales of both the infringing device and the toy bodies. The master further found that "the infringed patent gave the entire marketable value to the toy," and he was of opinion that "there should be no apportionment." His ultimate holding, however, was that "damages should be awarded rather than profits"; accordingly he examined into the subjects of impaired profits and diverted profits, finding the former to be $16,015.70 and the latter $14,596, which sums were awarded as damages, $30,611.70. The basis of the impaired profits was complainant's "reduction of selling prices and increase of cost attributable to defendant," and that of the diverted profits was "profits on sales complainant would have made had defendant not been in the market." It is to be observed of the last two findings that the master allowed impaired profits only on toys with the power in suit (i. e., toys containing the patented device), while he allowed diverted profits on all toys, those with and those without this power. Besides the apparent inconsistency of these allowances, the first is based on the master's conclusion that, in the absence of Clark's infringing competition, complainant could have earned as an average profit on each toy having the power device it sold during the infringing period a sum equal to the mean of the total profits earned on each toy (both with and without such power) by the copartnership before and by itself during that period; and as ground for the second the master concluded that, but for such competition, the complainant's sales of both classes of toys during the infringing period would have equaled the highest average of the partnership sales in a series of four years prior to that period. There is no presumption of law that complainant could have accomplished these ends (United States Frumentum Co. v. Lauhoff, supra, 216 Fed. at 614, 132 C. C. A. 614;

Seymour v. McCormick, 57 U. S. [16 How.] 489, 490, 14 L. Ed. 1024);
and the evidence shows that such doubtful considerations enter into the
findings in this behalf as to render them unduly speculative and con-
jectural, as, for instance, the increase in cost of manufacture, large
sales made by both parties of toys without the power device, though
otherwise substantially like those with the device, Clark's greater ex-
perience and capabilities in the toy business, which were not only lost
to but also exercised against Schieble as well as complainant, and
which seem to have enabled Clark to gain distinct preference over com-
plainant among toy dealers—these and kindred considerations would
(even assuming that no infringement had taken place) make it unsafe
in the instant case to adopt the master's method of so measuring com-
plainant's pecuniary loss. Further, if we presently lay to one side the
question of apportionment of profits, the finding as to profits received
by Clark presents questions of much doubt. The master was not satis-
fied that even the whole of these profits as he found them, much less
any apportionment of them, would furnish the true measure for re-
covery. Complainant's expert accountant fixed Clark's profits at
$19,247.05, while the opposing accountant first fixed them at $5,537.09,
and later at $2,702.48. The master says of these results:

"The great difference shown is due, not to different reading of the books,
but to different views as to items to be allowed for expense."

We need not attempt here to analyze or reconcile these differences
between the accountants or between them and the master; for this
would lead to an extended discussion of expenses, such as depreciation
of Clark's machinery, deduction of his salary, also other subjects af-
fecting profits, and in the end to an unsatisfactory solution of the
ultimate problem.

[3] Moreover, even if Clark's profits were resorted to as a measure
of damages, the rule of apportionment would have to be applied. Tes-
timony was offered showing that complainant sold toys which, apart
from the running wheels and axles, did not contain the power device;
and enough appears as to the prices at which these toys were sold to
show approximately complainant's own estimate of the value of the
body portion and of the power device separately. Mr. Schieble, pres-
ident of complainant, testifying in reference to locomotive toys illus-
trated in complainant's catalogue of 1911 and sold within the infring-
ing period, said:

"This engine body was precisely the same as the engine or locomotive No. 1
of that catalogue, which has the power in suit, and was made from the
same die. * * * These locomotives without power so sold, had the same
body as the locomotives with power, and sold without power for $4.15 a dozen.
The locomotives with the power in suit sold at $7.20 per dozen, and the
locomotives without the power in suit at $4.15 per dozen, or a difference of
$3.05 per dozen, or 25$^5/_{12}$ cents apiece."

Thus the complainant sold locomotives equipped with the power
device for 60 cents each, and others having exactly the same body,
though without the power device, save as to the wheel and axle fea-

tures, for 35 cents each. The object of including the running wheels and axles of the power device in sales of the body portion was obviously to supply contrivances called "pull toys." The power device proper would therefore appear to add, not only 25 cents to the selling price of the toy, but also the reasonable value of the running wheels and their axles; for in view of the patent in suit any estimate of relative values would be manifestly erroneous which would subtract from the power device its running wheels and axles and add them to the toy body. Yesbera v. Hardesty Mfg. Co., 166 Fed. 120, 125, 126, 92 C. C. A. 46 (C. C. A. 6); Herman v. Youngstown Car Mfg. Co., 216 Fed. 604, 608, 609, 132 C. C. A. 608 (C. C. A. 6). According, then, to Mr. Schieble's testimony, it would seem safe to treat the toy body alone and the power device proper as substantially equal in value. This view is strengthened by Mr. Clark's testimony concerning his own sales. Testifying in relation to a locomotive with cars attached as illustrated in his catalogue of 1912, and the retail prices at which they were sold within the infringing period, he stated:

"The retail price of No. 550 train engine retails for $1, and each car attached to the engine, that has no power, retails at 50 cents each."

He also stated that this locomotive "has the power in suit," but that the cars of the train, passenger cars, "have no power"; and it is significant that the cars each sold for one-half the price of the engine. Although the bodies of the cars differ in form from the body of the locomotive, yet we understand that the bodies are each struck up from a single sheet; and Clark's testimony does not indicate that the difference in prices was due to anything other than the presence of power in the locomotive and its absence in the cars. We have in mind that the toys sold by the respective parties were not all of the same dimensions; and yet we infer from the catalogues and exhibits that those embraced in the sales mentioned are equal to, if not above, the average toys involved. The importance of such sales cannot well be overestimated; they represent the concurring estimate and judgment of both buyer and seller in actual transactions. They represent the selling or commercial value of the toys in both wholesale and retail transactions; but above all they effectively establish the relative values of the patented and unpatented parts of the toys in issue. The master points out, it is true, that no separate cost account was kept of either infringing or noninfringing toys, though some disputed estimates of cost appear. The commercial values alone, however, as the parties themselves thus separately determined them, furnish an answer to the insistence of counsel, as well as the ruling of the master, that apportionment could not be made as to profits or damages arising from the use of the infringing device; for, when it is once clear that the selling value was fairly attributable half to the patented and half to the unpatented features, it follows that profits should be attributed in the same proportions—unless it appears that due regard to the cost element calls for another inference. It is enough to say that we are not satisfied that there was any materially different relation between cost and selling value in the patented and in the unpatented parts.

[4] What has been said of the master's report might seem to require a further accounting, but we think this is not necessary; on the contrary, enough appears in the record safely to dispose of the case, and it is certain that the litigation should be brought to an end. It scarcely need be said that cases of this class are each controlled at last by their own peculiar facts and circumstances, and that the pecuniary loss in any event can be determined only through reasonable approximation. Our consideration of the record is convincing that the difficulties entering into the present case may be solved best by ascertaining the value of the patent property taken, or of the earning capacity of that property. Such a course was approved in Dowagiac Mfg. Co. v. Minnesota Plow Co., supra, 235 U. S. 648, 35 Sup. Ct. 224, 59 L. Ed. 398, the court saying:

"As the exclusive right conferred by the patent was property, and the infringement was a tortious taking of a part of that property, the normal measure of damages was the [real] value of what was taken."

As this court said in United States Frumentum Co. v. Lauhoff, supra, 216 Fed. at page 616, 132 C. C. A. 620:

"The real value—the actual value—of what has been taken is always the ultimate question."

The opposed expert accountants furnished estimates of the total net profits earned by the copartnership, composed of Schieble and Clark, for the five years next preceding the infringing period, and likewise of complainant's as well as of Clark's profits during the latter period. The accountants do not agree in amount as to the first period, though they substantially agree as to complainant's profits during the infringing period; and their differences concerning Clark's profits in the latter period have already been pointed out. In view of the circumstances of the infringement and the established rule of apportionment, we cannot think that Clark's profits, even as the master found them, would afford a reasonable measure of complainant's loss or show the true worth of the use of the patented power device; indeed, if either estimate of Clark's accountant were accepted, he would in effect be rewarded for his own wrong.

The complainant's accountant and likewise the master estimated the average profit on each toy containing the power device which was produced by the copartnership and by the complainant and Clark respectively thereafter and during the infringing period; and these profits can in the same manner also be estimated from data furnished by Clark's accountant, such as the total net profits on all toys and the number of toys produced by the parties respectively during both periods; but for reasons already stated in respect of the infringing period we need not consider the estimates of profits made during that time. The value as well as the earning capacity of the power device may, however, be safely based on the average profit earned upon each of the toys containing that device during the noninfringing period. As it seems to us, that is the normal period from which such value is to be derived; it was the time in which Clark, as well as Schieble,

devoted his unbiased efforts to ascertain the utility and advantage of the invention, the power device, "over the old modes or devices for working out similar results" (Suffolk Co. v. Hayden, 70 U. S. [3 Wall.] 320, 18 L. Ed. 76; United States Frumentum Co. v. Lauhoff, supra, 216 Fed. 618, 132 C. C. A. 614); certainly Clark is in no position to question such utility and advantage; he subsequently appropriated the patented device through infringement. In Bemis Car Box Co. v. J. G. Brill Co., 200 Fed. 749, 764, 119 C. C. A. 229, 244 (C. C. A. 3), when refusing to disturb the finding of a referee who had taken an average of selling prices occurring part in the infringing and part in the noninfringing years, Judge Buffington said:

"* * * There is strong reason for basing the selling price on the noninfringing years and excluding the infringing years, for the former represent the normal legal status during which the plaintiff was reaping the legitimate profits from its patent monopoly, while the latter represent that price depreciated by the wrongful competition of the defendant. * * *"

Considering the opposed accountants' estimates of the net profits earned by the partnership during its life of five years, in connection with the number of toys the firm produced in that time containing the power device, and giving effect to the rule of apportionment, and considering also the tortious character of the taking and the value of the cultivated trade field which Schieble had bought from the partnership, we conclude that a conservative estimate of the value of the patent property taken, or of the earning capacity of that property, is 21 cents per dozen toys, or 1¾ cents each, one size and style with another. By either name (value of property or earning capacity) we merely describe the damage suffered by complainant, reduced to a unit basis. We do not see that it would be improper to call this a royalty, whether fixed by a court or jury after the event, instead of by the parties in advance; the name is immaterial.[1] The total number of toys produced by Clark during the infringing period and containing the power device—1,026,172—is not in dispute. The resulting sum to be recovered as damages is $17,958, with additional damages for delay in payment, which are to be estimated upon this sum at the rate of 6 per cent. per annum from the close of the infringing period to the date of the final decree to be entered in the court below.

It is urged that the allowance made to the master as compensation for his services is excessive. In the face of the trial judge's knowl-

[1] In the Frumentum Case, supra, 216 Fed. 617, 132 C. C. A. 621, it is said: "This damage or compensation is not, in precise terminology, a royalty at all, but it is frequently spoken of as a 'reasonable royalty'; and this phrase is a convenient means of naming this particular kind of damage." Again in Dowagiac Mfg. Co. v. Minnesota Plow Co., supra, 225 U. S. 648, 35 Sup. Ct. 221, 59 L. Ed. 398, when speaking of a patent that had been kept in close monopoly, it was said: "In that situation it was permissible to show the value by proving what would have been a reasonable royalty, considering the nature of the invention, its utility and advantages, and the extent of the use involved." And see Hunt Co. v. Cassiday, 64 Fed. 585, 586–7, 12 C. C. A. 316 (C. C. A. 9); Cassidy v. Hunt (C. C.) 75 Fed. 1012, 1017; Bemis Car Box Co. v. J. G. Brill Co., supra, 200 Fed. 759 to 762, 119 C. C. A. 229.

edge of the services, we cannot say that the allowance exceeds the bounds of a sound discretion.

[5] It is strenuously urged for complainant that the recovery allowed below ought to be materially increased by the addition of an arbitrary sum in the nature of damages; and we assume that a like view will be entertained in respect of the present allowance. There was no foundation for treble damages. Clark first operated under a patent; the court below held there was no infringement; hence Clark can scarcely be treated as having intended a willful injury. Vrooman v. Penhollow, 222 Fed. 894, 899, 138 C. C. A. 374 (C. C. A. 6); Seymour v. McCormick, 57 U. S. (16 How.) 479, 488, 14 L. Ed. 1024. Further, upon the coming in of the master's report the court below declined to impose a penalty. The matter was so far within the discretion of the court that we are not inclined to disturb the ruling. Topliff v. Topliff, 145 U. S. 156, 174, 12 Sup. Ct. 825, 36 L. Ed. 658; Fox v. Knickerbocker Engraving Co., 165 Fed. 442, 444, 91 C. C. A. 386, and citations (C. C. A. 2).

The decree below is reversed, and the cause remanded, with direction to enter final decree for the recovery above allowed; the costs of this court will be divided.