## NATIONAL TUBE CO. v. MARK et al.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1926.)

No. 4360.

1. **Patents ☞319(1)—Claimed loss of profits because of infringement, based on profits from complete manufacture from raw material, which might have been made in filling contract, held untenable.**

In accounting for profits and damages for patent infringement, claimed loss of profits, based on alleged profits that plaintiff would have made on contract filled by defendant, profits being computed on complete manufacture from raw materials, only part of which would require use of patent infringed, *held* untenable.

2. **Patents ☞319(1)—Court will resort to doctrine of reasonable royalty, where damages for infringement cannot be ascertained.**

Where court, after considering all circumstances, are unable to determine what damages were sustained because of patent infringement, resort will be had to the doctrine of reasonable royalty.

3. **Patents ☞319(1)—Reasonable royalty may be determined, even though no royalty had been fixed, and in absence of express evidence of amount.**

Reasonable royalty may be determined, notwithstanding owner of patent had granted no licenses and fixed no royalty, and express testimony as to amount is absent from record.

4. **Patents ☞319(1)—Amount of reasonable royalty for patent infringement stated.**

Where machine infringing patent had been used in filling contract of $677,000, and plaintiff had presented testimony that on basis of estimate of savings by defendant of $137,000 a reasonable royalty would be about $110,000, *held*, that master's estimate of $25,000 was reasonable, and that there was no room for imposition of special or punitive damages. Infringement was not adjudged until the decree of this court, more than four years after infringement ceased.

5. **Patents ☞319(4)—Interest on damages on fixed royalty basis calculated from date of infringement, and may be applied to recoveries of reasonable royalty.**

Usually, where actual damages for patent infringement are otherwise unliquidated, interest is allowed only from date of master's report, while interest on damages on fixed royalty basis is calculated from date of infringement ceased, and may in court's discretion be applied to recoveries of reasonable royalty.

6. **Patents ☞319(4)—Interest allowed on damages for patent infringement for one-half of period of unreasonable delay in filing master's report where neither party was to blame.**

Where master's report allowing damages for patent infringement, which had ceased in January, 1910, was not filed until February 29, 1924, and neither party was more responsible than the other for long delay, award of interest at 6 per cent. for one-half of such period, with full rate of interest from date of master's report, *held* proper.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Action by the National Tube Company against Cyrus Mark and others, copartners and as the Mark Manufacturing Company. From the decree, plaintiff appeals. Decree modified, and record remanded, with directions.

See, also, 216 F. 507.

D. Anthony Usina, of New York City (E. N. Huggins, of Columbus, Ohio, on the brief), for appellant.

Clarence D. Kerr, of New York City (Charles Neave, of New York City, on the brief), for appellees.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This appeal is from a decree of the District Court upon an accounting for profits and damages for infringement of United States patent No. 888,984, issued May 26, 1908, to Fell (owned by plaintiff appellant), on "apparatus for rifling pipes or tubes." The bill was dismissed by decree of the District Court October 11, 1912. This court reversed that decree July 25, 1914, and directed the issue of decree for injunction and accounting as to claims 1, 2, and 3. 216 F. 507.

On the accounting, the master found that $25,000 would have been a reasonable fee for defendant to have paid, and for plaintiff to have accepted, as a license fee for the use of the patented machine, made an additional allowance of $15,000 for plaintiff's costs and expenses of the infringement suit, and de-

nied interest. On exceptions, the District Judge modified the master's report by eliminating the provision for expenses of litigation incurred by plaintiff, and awarded the latter actual damages, assessed at $25,081.55, together with costs of suit including the costs of the accounting. Plaintiff alone appeals.

The infringement consisted solely in the use by defendants of one machine embodying the Fell invention found by this court to infringe the Fell patent, this machine being employed in the filling of an order of the Southern Pacific Company given in March, 1909, for about 184 miles laid length (about 190 miles over all) of 8-inch rifled pipe, at 67½ cents per lineal foot. The contract was completed in January, 1910. The master found that defendants had made no profit from the performance of this contract. Plaintiff does not challenge this conclusion. [1] Plaintiff presents a variety of proposed bases for recovery. Foremost is its claim that it was damaged in the sum of more than $365,000 by loss of profits it would have made, had it, instead of defendants, been the successful bidder for the rifling contract.[1] On its face this claim seems extravagant, and not alone because the total contract price of the pipe at 67½ cents was but a trifle more than $677,000 (less than twice the now asserted earnable profit), and at 70 cents would have been less than 4 per cent. more. It seems incredible that, had plaintiff supposed the profit would be even a substantial fraction of the amount now claimed, it would have failed to reduce its bid below that of defendants. But, passing this and certain other considerations which strongly discredit this assertion of damage,[2] it seems enough to say that the asserted loss of profits is predicated upon a computation by the auditor of plaintiff and its affiliated companies (subsidiaries of the United States Steel Corporation) of what the experience of one of the subsidiaries nearly a year later indicated it could have made by manufacturing the rifled pipe from the raw materials. In the manufacture of finished rifled pipe from the ore there are eight distinct processes, which we enumerate in the margin.[3]

Each of the first four of these manufacturing processes produces a finished commercial commodity, and without regard to the purpose for which the product is to be used. Neither of the remaining processes, except the seventh, has any practical relation to the question whether the pipe is to be rifled or plain. In the seventh process alone is the invention of the patent involved.

Plaintiff made no attempt to apportion to the rifling process alone any part of this claimed profit realizable by plaintiff. It would seem that normally each of the commercial products could have been sold on the market at a profit, whether or not plaintiff obtained the contract in question. It seems very clear that the experience of plaintiff's affiliated company furnished no satisfactory basis for determining the damage caused plaintiff by defendants' use of the rifling invention alone. We agree with the District Judge that this claimed loss of profits on account of infringement is extravagant and untenable.[4]

The District Judge's computation of plaintiff's damages from loss of profits was based on his conclusions, from the testimony, that 67½ cents per foot fairly represented the cost of rifled pipe, and that plaintiff's bid of 70 cents would thus have netted it a profit of 2½ cents per foot. If the judge rightly estimated the cost of rifled pipe, we see no clear injustice in using 70 cents as the lowest price at which plaintiff could have had the contract. Defendants had a perfect right to bid for it; by bidding they did not infringe the patent, and the record is not, to our minds, convincing that they then had any intention of infringing. But we are not sure that 67½ cents was fairly representative of the cost of rifled pipe.

Plaintiff's infringement suit was begun in July, 1909, about four months after the award of the Southern Pacific contract, which gave defendants the right to use the Isaacs

---

[1] Defendants' bid, as already stated, was 67½ cents per foot; plaintiff bid 75 cents. Later plaintiff offered to take 70 cents, and refused to take 65 cents, per foot.

[2] Including failure to take into account certain overhead expenses, as also an apparent lack of certainty that plaintiff would have obtained the contract, had it not been awarded to defendants. The bid of another manufacturer was below that of plaintiff.

[3] The manufacture (1) of pig iron; (2) of steel ingots; (3) of slabs; (4) of plates; (5) of skelp; (6) plain tubes or pipes, unfinished and ready for rifling, if desired; (7) rifling of unfinished pipe; (8) finishing it by evening and cutting threads at the ends to enable their coupling to form continuous lines.

[4] Another computation of somewhat similar loss of profits, based upon a manufacture from skelp (instead of ore) to finished pipe, we think equally untenable.

and Speed invention (then owned by the Southern Pacific Company) for rifling pipe.[5]

On the accounting plaintiff presented estimates to the effect that by the use of a machine involving the Fell invention defendants saved $137,513, as compared with the Isaacs and Speed cold process, or $98,250 as against the Isaacs and Speed hot process. This estimate was upon the basis generally that one Fell rifling machine could rifle the pipe, hot as it came from the mill, and as fast as it would come from the ordinary mill in use in 1909, while four Isaacs and Speed machines would be required to do the same work. A demonstration made before the master of the working of a modified Isaacs and Speed machine convinced that officer that defendants could have used such a machine in 1909 and 1910 as economically as the Fell machine, and so made no saving by the use of the latter machine. The demonstrating machine so used had some features not contained in the Isaacs and Speed machine (for one example, the pushing device for forwarding the pipe through the revolving rolls), but nothing which we understand amounted to an infringement of the Fell patent. While the fact that the demonstrating machine had not been used commercially lessens the effectiveness of the demonstration, we are not greatly impressed by the argument that this demonstration must be laid entirely out of account because of the fact that in 1909 and 1910 the Isaacs and Speed device was not regarded usable, or even was not in fact usable, on hot pipe in its patented form, except by the changes and additions such as made by defendants for demonstrating purposes, and by the contention that "the only fair standard of comparison is that which had

been known and actually used prior to the time of the infringement."

It does not necessarily follow that, had temporary injunction issued in the infringement suit, the same mechanical ability which was later developed would not have appeared when the need therefor actually came. There is seemingly reliable testimony that the construction of a machine which finally developed into the design of the demonstrating machine was begun in 1909, was not then completed, because temporary injunction was not issued, was completely and successfully operated in 1911, after the performance of the contract in question was completed, was dismantled in 1911, reassembled in 1918, and operated a number of times in 1918 and 1919, and later in the demonstration before the master, although apparently not in any case commercially.

[2] The result of our consideration is that we find ourselves unable to determine, with any degree of satisfactory accuracy, what damages were sustained through plaintiff's loss of profits, or what savings, if any, were realized by defendants through the use of the Fell invention. At the same time, infringement is undoubted, and defendants are not complaining of the award made by the District Court. The case is one which we think peculiarly calls for resort to the doctrine of reasonable royalty. Dowagiac Co. v. Minnesota Co., 35 S. Ct. 221, 235 U. S. 641, 59 L. Ed. 398; U. S. Frumentum Co. v. Lauhoff (C. C. A. 6) 216 F. 610, 132 C. C. A. 614; Clark v. Schieble (C. C. A. 6) 248 F. 276, 160 C. C. A. 354; K. W. Ignition Co. v. Temco Co. (C. C. A. 6) 283 F. 873, 876, et seq.; Gear Grinding Machine Co. v. Studebaker Corp'n (C. C. A. 6) 4 F.(2d) 510.

[3] The fact that plaintiff has granted no licenses and fixed no royalty does not preclude resort to the reasonable royalty basis. Dowagiac Co. v. Minnesota Co., supra; K. W. Ignition Co. v. Temco Co., supra, at page 878. Nor would even lack of express testimony as to the amount of a reasonable royalty preclude us from considering that subject. K. W. Co. v. Temco Co., supra, at page 878; Malleable Iron Range Co. v. Lee (C. C. A. 7) 263 F. 901; Clark v. Schieble, supra.

[4] As to the amount of reasonable royalty: Plaintiff presented testimony that, on the basis of an estimated saving by defendants of about $137,000, a reasonable royalty would be about $110,000. That estimate impresses us as highly excessive. On consideration of the estimates presented on both sides, we think the master's estimate of $25,000 a rea-

---

[5] In our decision upon the validity and infringement of the Fell patent (216 F. 507) we held that the Isaacs and Speed patent did not anticipate Fell's patent, the rifling under whose invention was accomplished by the use of two concave-faced "skewed rolls" (an upper and a lower, not themselves new in the art), which rolls forwarded and rotated the pipe, the "rifling" being accomplished by the use of circumferential beads or ribs upon the concaved faces of the two skewed rolls, which it was thought made the Fell device especially adapted to use in connection with the original drawing and rolling processes while the steel was hot and comparatively plastic. In the Isaacs and Speed machine, the rifling indentations were made by four rollers which projected inwardly radially to the pipe, the innermost points of the rolls being in a circle considerably smaller than the outer periphery of the pipe. The rollers did not, as did Fell's "skewed rolls," forward the pipe. That operation was supplied by an independent pulling device.

sonable one; and while we are not prepared to say that the basis of the District Judge's estimate of plaintiff's actual damages at $25,081.55 is clearly unsustainable, we are better content to adopt the measure of reasonable royalty, and the master's estimate of its amount. We agree with the District Judge that there is no room for the imposition of special damages, and with both the master and the judge that the case does not call for punitive damages. Until our decree in 1914, more than four years after infringement ceased, defendants had not been held to have infringed the Fell patent even prima facie.

[5, 6] It remains to consider the question of interest on the award. It has been the usual rule, where actual damages are otherwise unliquidated, to allow interest only from the date of the master's report. Tilghman v. Proctor, 8 S. Ct. 894, 125 U. S. 136, 160, 161, 31 L. Ed. 664; Dunkley v. Vrooman (C. C. A. 6) 272 F. 468, 469. On the other hand, interest upon damages on a fixed royalty basis is usually calculated from the date infringement ceased, as the time royalty would have been due and payable. Walker on Patents (5th Ed.) § 571. This practice is not limited to cases of fixed royalty, but may, in the court's discretion, be applied to recoveries of reasonable royalty. Goodrich Co. v. Consolidated, etc., Co. (C. C. A. 7) 251 F. 617, 624, 163 C. C. A. 611; Malleable Iron Range Co. v. Lee, supra, at page 902; Dowagiac Co. v. Deere & Webber Co. (C. C. A. 8) 284 F. 331, 332; Merrell Soule Co. v. Powdered Milk Co. (C. C. A.) 7 F.(2d) 297, 300. And we have allowed interest on reasonable royalty from the date infringement ceased. Clark v. Schieble, supra, at page 283 (160 C. C. A. 361); K. W. Ignition Co. v. Temco Co., supra, at page 880.

In Fox Typewriter Co. v. Underwood Typewriter Co. (C. C. A. 6) 287 F. 453, 455, the reason for allowing interest from the date of the master's report does not appear. Cf. Merrell Soule Co. v. Powdered Milk Co., supra, at page 300; also De Motte v. Whybrow (C. C. A. 2) 263 F. 366, 368. Here no royalty had been fixed by plaintiff or otherwise. The infringement ceased in January, 1910. The master's report was not filed until February 29, 1924, more than 9½ years after the case was decided on the merits in this court, and more than 14 years after the infringement ceased. Defendants have not questioned the amount awarded plaintiff by reason of the infringement. That plaintiff has been deprived of the use of the money to which it has

10 F.(2d)—28

been found entitled for so long a time has materially lessened the pecuniary value of its recovery. These considerations affect the equities, and thus the exercise of judicial discretion. It does not appear, however, that one party is more responsible than the other for this long delay. Our discretion will seemingly be best exercised by awarding plaintiff interest at 6 per cent. on $25,000 for one-half the period between January 31, 1910, and February 29, 1924, with interest at like rate upon the aggregate of principal and interest from the last-named date, being the date of the master's report.

The decree of the District Court will be modified, in accordance with the views expressed in this opinion, and the record remanded to the District Court, with directions to enter a new decree conformably thereto. The awards to plaintiff of the costs of suit and of the accounting will of course stand. Plaintiff will recover its costs of this court on this appeal.