## MALLEABLE IRON RANGE CO. v. BECKWITH.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1911.)

No. 1,695.

1. PATENTS (§ 167*)—CONSTRUCTION OF TERMS—"CONVEX" SURFACE.

The word "convex," used in a claim of a patent as applied to a surface, is to be given its generally accepted meaning, as indicating a surface of a more or less spherical form, rather than cylindrical.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

---

*For other cases see same topic & §. NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PATENTS (§ 328*)—VALIDITY—INFRINGEMENT—RESERVOIR FOR STOVES.

The Beckwith patent, No. 787,425, for a reservoir for stoves and ranges, upon his patent, No. 787,425, adjudging validity of the patent, is not void for indefiniteness, nor for anticipation, but discloses patentable invention, the combination shown being one of great utility and success; also *held* infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

Suit in equity by Arthur K. Beckwith against the Malleable Iron Range Company. Decree for complainant, and defendant appeals. Affirmed.

See, also, 174 Fed. (C. C.) 1001.

This appeal is from an interlocutory decree in favor of the appellee, Beckwith, upon his patent, No. 787,425, adjudging validity of the patent and infringement thereof by the appellant defendant, with injunctional relief.

The Beckwith patent was granted April 18, 1905, under an application filed September 11, 1903, for "improvements in stoves," and contains 11 claims; but claim 11 is alone involved in the charge of infringement, reading as follows:

"11. In a stove or range, the combination of the convex rigid back plate, a sheet-metal reservoir, and means for clamping said reservoir against the convex surface of said plate, for the purpose specified."

"In the specifications are the following recitals and references involved in the issues:

"The objects of this invention are: First, to provide an improved reservoir by which water may be quickly heated; second, to provide an improved reservoir for stoves or ranges by which a maximum amount of the waste heat may be utilized; third, to provide an improved reservoir for stoves or ranges in which the heating of the water is under control. * * *

"A structure embodying the features of my invention is clearly illustrated in the accompanying drawings, forming a part of this specification, in which—

"Figure 1 is a detail vertical sectional view through a structure embodying the features of my invention, taken on a line corresponding to line 1 1 of Fig 2. Fig. 2 is a detail horizontal sectional view taken on line 2 2 of Fig. 1. Fig. 3 is an enlarged detail view taken on line 3 3 of Fig. 2. Fig. 4 is a detail sectional view showing the manner of supporting the reservoir on the range, taken on line 4 4 of Fig. 3.

"In the drawings the sectional views are taken looking in the direction of the little arrows at the ends of the section lines, and similar letters of reference refer to similar parts throughout the several views.

"Referring to the lettered parts of the drawings, A represents the rear portion of my improved stove or range, and A′ the oven thereof. These parts are illustrated in conventional form.

"I provide a back plate *a*, which is convex on its outer face or curves outwardly. (See Figs. 1 and 2.) The back plate *a* is cast or formed of rigid material.

"The reservoir B is formed of sheet metal, preferably copper, and its inner side *b* is clamped against the convex face of the back plate *a* by the supporting-straps B′. The clamping of the side of the reservoir against the convex plate *a* holds the side of the reservoir in close contact therewith over its entire surface and places the same under tension, so that the tendency to buckle or the possibility of its buckling, and thereby forming air-chambers between the side of the reservoir and the plate, is overcome. The inner end of the supporting-straps B′ of the reservoir are bent outwardly and perforated to receive the bolts *c*, which are arranged through the back plate *a*. The straps are of such length that tension can be applied thereto by the bolts.

"The reservoir B is surrounded by a casing C, forming an air-chamber C″ between it and the side walls of the reservoir. The casing C is embraced

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the frame-like end plate C', supported on the plate *a*. Outwardly-projecting flanges *i* on the back plate *a* engage the end plates C'. The inner edges of the metal casing C are turned inwardly to form flanges *c'*. These flanges *c'* are engaged by the lugs *b'* on the straps B', so that the parts are securely supported."

The drawings are as follows:

A. L. Morsell and C. C. Linthicum, for appellant.
Harry C. Howard and Fred. L. Chappell, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The Beckwith patent, No. 787,425, involved in this appeal, is for "improvements in stoves," and the decree of the Circuit Court, in favor of the complainant below, is challenged upon two general grounds: (1) Invalidity of the claim in suit, for want of patentable invention, for indefiniteness, for anticipation by prior patents, and for prior use; and (2) for noninfringement of the clamping means shown in the patent. The claim reads:

"11. In a stove or range, the combination of the convex rigid back plate, a sheet-metal reservoir, and means for clamping said reservoir against the convex surface of said plate, for the purpose specified."

It is plainly a broad claim of invention in the combination of elements thus stated, and the controversy over the issues has produced voluminous testimony and alike voluminous briefs submitted by counsel for the hearing. In reference to the briefs (extended in several hundred pages of letterpress upon each side), it may well be remarked that both the original and (so-called) reply briefs are wanting in the conciseness of presentation intended by the rules and needful to save undue burden in the labors of the reviewing court. Succinct propositions of ultimate fact, as well as of law, should be stated, with reference to supporting testimony of record, rather than extended quotations therefrom.

Irrespective of the question of priority, the testimony is undisputed that the device of the patent, as defined in the foregoing claim 11, was the outcome of constant effort on the part of manufacturers to improve the means for heating water, in a reservoir attachment to the stove or range. The objects of invention, as stated in the specification, were:

"First, to provide an improved reservoir by which water may be quickly heated; second, * * * by which a maximum amount of waste heat may be utilized; third, * * * in which the heating of the water is under control."

Upon the general inquiry of prior art, to ascertain whether invention was involved in the simple device of the patentee, the opinion filed by the trial judge aptly deduces from the testimony, as follows:

"The history of the prior art teaches that for many years there had been a growing demand for a right-hand reservoir; that is, one located away from the fire box, and so adjusted as not to interfere with the heating of the oven, and so attached to the range that the water in the reservoir would heat quickly. Naturally stove makers were anxious to meet this demand. The old form of cast iron reservoirs was discarded, and sheet metal substituted therefor. The main difficulty in the employment of the sheet metal was its tendency to warp or buckle under the influence of heat, and leave an air space between the reservoir and the range, which seriously interfered with the transmission of heat to the water. The early back plates were flat. Experience showed that they warped out of shape during the process of annealing. Bumps and hollows appeared, which created numerous air pockets. This necessitated the use of the bulging bar to correct these imperfections. To meet complaints that water did not heat quickly, experiments were tried by leaving out the back plate entirely and allowing the products of combustion to come into direct contact with the sides of the reservoir. This produced rapid and intense heat, but was found destructive to the sheet metal. To remedy this difficulty a baffle plate was attached to the reservoir. Later rigid back plates were again introduced. In most of these ranges the weight of the water in the reservoir was relied upon to secure close contact with the range; but after all such efforts the right-hand reservoir remained unsatisfactory for one reason or another. Among other experimenters was the defendant company. About the time the complainant's range came on the market, defendant was engaged in conducting certain experiments on sheet metal reservoirs at the hardware store of one Rassman at Beaver Dam, Wis. While these experiments were going on, Rassman, who was also the sales agent of the Beckwith range at Beaver Dam, had occasion to visit Dowagiac, Mich., and there saw one of the Beckwith ranges, built under the patent in suit. Rassman came back and told defendant that Beckwith had solved the problem of the right-hand reservoir. Thereupon one of the new Beckwith ranges was obtained, and at the store of Rassman defendant's officers and experts made a thorough examination of the same,

and extended to Beckwith the compliment of adopting and appropriating all the elements of his device. Thereupon the defendant in its catalogue gave prominence to the convex rigid back plate as a new and prominent feature."

We concur, therefore, in the opinion, there expressed, that:

"Complainant's device maintains a closer contact over a larger area of the side of the reservoir, and therefore heats the water more quickly, than any of the earlier ranges."

And in the following conclusion thereof in favor of patentable invention under the general issue:

"I am persuaded that the combination of the patent involves inventive thought. The device is so simple, and other experimenters had come so near reaching the same consummation, that it is perhaps natural to conclude, after the fact, that nothing but mechanical skill was necessary to reach the success obtained by the inventor. In Webster Loom Co. v. Higgins, 105 U. S. 580, 591 [26 L. Ed. 1177], the attention of the Supreme Court was directed to a state of facts quite similar to those here present. The court say: 'This argument would be sound if the combination claimed by Webster was an obvious one for attaining the advantages proposed; one which would occur to any mechanic skilled in the art. But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not. for years, occur in this light to even the most skillful persons. It may have been under their very eyes; they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. Who was the first to see it, to understand its value, to give it shape and form, to bring it into notice and urge its adoption, is a question to which we shall shortly give our attention. At this point we are constrained to say that we cannot yield our assent to the argument that the combination of the different parts or elements for attaining the object in view was so obvious as to merit no title to invention. Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention.' In this connection it is proper to consider the great commercial success of the complainant's device. The sale of the new style of range commenced in January, 1903. Prior to 1903 the complainant manufactured less than 1,500 ranges. During the year 1903 they sold 2,300 ranges. During the year 1907, they sold about 15,000 ranges. This increase in business necessitated the construction of many new buildings and a corresponding increase in facilities all along the line. This enormous increase in the business is attributed largely to the popularity of the right-hand reservoir of the patent in suit, which practically superseded the structure theretofore built by complainant. Under the authorities this circumstance might turn the scale on the question of invention in a doubtful case. Smith v. Goodyear Co., 93 U. S. 486, 495 [23 L. Ed. 952]; Magowan v. New York Belting Co., 141 U. S. 332, 344 [12 Sup. Ct. 71, 35 L. Ed. 781]."

[1] The objection raised, that claim 11 is indefinite or ambiguous in terms, rests on the mention of the element "the convex rigid back plate" and the contention that the term "convex" does not indicate that "spherical convexity" was intended for the back plate, and would thus include "cylindrically convex" plates or "convexity in one direction only," for which anticipations are alleged in the prior art. As well stated in the opinion of the trial judge, not only in the popular sense (as defined in the standard dictionaries there cited) is the term

"convex" understood to mean spherical convexity, and thus fixes "the true shape of the back plate," but the drawings of the patent "show spherical convexity," as defined by the experts in the case, including "Mr. Wilkinson, the defendant's expert." We believe such meaning to be conveyed by the claim and that the objection for ambiguity thereof is untenable.

[2] The only matters introduced as anticipations and prior public use requiring discussion appear in two branches of the testimony—one showing an expedient adopted by the appellant (in its works) prior to the patentee's conception, and the other a device of Mr. Keep (a rival manufacturer), exemplified in his patent, No. 765,140, with alleged prior use. Conceding the force of both of these lines as approximations, tending to improve the contact of back plate and reservoir, we believe neither satisfies the burden of proof rightly imposed to establish the defense of clear anticipation of the patentee's combination of means. Beckwith sought means for assuring that contact of the parts (for better utilization of the heat) in their co-operation, or assemblage in place as the several parts are brought from the works. Recognizing the flexibility and tendency of the sheet metal of the reservoir to buckle and cause imperfect contact, he departed from the prior form of flat contact plates (malleable or cast) and provided the convex plate of the patent, whereby the buckle in the reservoir was taken up, when the parts were clamped in place as directed. Thus contact was maintained as the result of such structure and combination, without need of repair. Its utility is well proven, and the test of the alleged anticipations must be whether one or the other plainly disclosed these means in like combination.

For the prior expedient in the works of the appellant, its employés testify, in substance: That as early as November, 1901, and during the year 1902, while its malleable iron contact plates were substantially flat as patterned and made, it was their frequent practice to hammer the plate when in place in the range, by use of a hammer and a "bulging bar" (as named by the witnesses), to contact with the reservoir, and that bulges resulted in the plate—described by one of the experts as "bumps and hollows," as shown in three of the exhibit ranges—whereby better contact was obtained for heating efficiency. These witnesses concur in their version that convexity was intended and caused by this hammering, wherever contact of the parts was wanting, while the witness Terrell (called by the appellee), who was superintendent of the appellant's works during such operations, expressly denies that such was the purpose or substantial effect, and states that the plates were so hammered, when needful, to correct irregularities which occur in the casting from the annealing process. One of the appellant's witnesses (Grant) confirms the last-mentioned view of the purpose—"to hammer out the rough places on them." Testimony of this character, to prove anticipation, must be weighed with care, and we are not convinced that this awkward method of hammering was adopted to give convexity to the malleable iron plate, nor with recognition or understanding on the part of the appellant, or either of these operators in its works, that such form would maintain con-

tact with and under the normal conditions of the reservoir wall, as disclosed by the patentee. In so far as bulge or "protuberance" is mentioned or appears in the three exhibit ranges of appellant's make, we concur in the opinion of the trial judge that they were accidental productions; that their occurrence "attracted no attention and was considered a matter of no significance until Beckwith made" convexity "an important element in his combination." Otherwise, no explanation appears for such use of hammer and bar, after the parts were in place, for more than a year, when convex form could be far better provided before attachment; and, furthermore, the evidence shows that no plates were manufactured by the appellant, in convex form, until February, 1903, when it was ascertained that Beckwith was so making them successfully. We believe the testimony, therefore, to be insufficient to forestall the Beckwith conception.

The appellant, however, further relies upon anticipation under the testimony of Mr. Keep, superintendent of the Michigan Stove Company (a rival manufacturer), and two patents issued to him—(1) No. 715,666, December 9, 1902, on application of September 23, 1901, for "hot water reservoir for stoves"; and (2) No. 765,140, July 12, 1904, on application of October 26, 1903, for "detachable reservoir for ranges." It is conceded in the brief for appellant that No. 715,666 "does not disclose any form of contact plate," and is inapplicable, except by way of explaining Mr. Keep's testimony that a plate was "embodied in addition to the features shown in the patent." In No. 765,140 appears incidental reference to "a convex portion of the end of the range which forms the outer wall of one of the flues" —obviously not spherically convex in form or function—and not mentioned in the claims, nor shown in contact with the reservoir. Thus the contention that Keep employed his form of convex plate for like function with that of Beckwith rests alone on his assertions of practice in his works prior to the Beckwith improvement. Examination of his testimony furnishes no support for such contention, as we believe. As stated in the opinion below, in reference thereto:

"He never grasped the coacting principle which was the soul of the Beckwith invention, namely, to stretch the sheet metal over a convex protuberance, and thus establish such tension that the sheet metal could not spring away or warp under the influence of the heat; means being furnished for increasing the tension from time to time, so as to make the closest contact absolute and permanent. by means of this constant stretching."

Keep's structure, as described both in his patents and testimony, was not adapted to make contact of back plate and reservoir within the Beckwith conception, and he expressly disclaims such purpose, stating that he avoided its tendency "to strain the front of the reservoir in contact," relying upon the weight of water in the reservoir, instead of tension and clamping means, to maintain contact.

We are of opinion, therefore, that the validity of the patent claims in suit is rightly upheld by the decree, and that infringement thereof by the appellant's structure in evidence is well established, with its clamping means identical in function, although varied in form.

The decree accordingly of the Circuit Court is affirmed.