B. F. GOODRICH CO. v. CONSOLIDATED RUBBER TIRE CO. et al.

(Circuit Court of Appeals, Seventh Circuit. April 9, 1918.)

No. 2529.

1. PATENTS ⬅️312(3)—INFRINGEMENT—REASONABLE ROYALTY.
In a suit for patent infringement, evidence *held* sufficient to warrant the court in applying the doctrine of reasonable royalty to the assessment of damages.

2. PATENTS ⬅️327—PRECEDENT—CONSIDERATION.
Findings of a District Court of another circuit, affirmed by the Circuit Court of Appeals of that circuit, as to damages in a suit involving the patents, are entitled to much weight and consideration in a suit in this circuit, based on the same patents and covering practically the same period.

3. PATENTS ⬅️318(1)—INFRINGEMENT—ASSESSMENT OF DAMAGES—MODE.
Difficulty in determining the reasonable royalty in a suit for patent infringement does not alone bar the court from adopting that rule, even though it widens the field of investigation.

4. PATENTS ⬅️312(3)—INFRINGEMENT—REASONABLE ROYALTY.
In a suit for infringement of a patent for a rubber tire, evidence *held* to support a finding that 5 cents per pound was a reasonable royalty.

5. PATENTS ⬅️318(5)—INFRINGEMENT—INTEREST.
In an infringement suit, where profits are awarded, interest is not allowed until the amount has been judicially determined; but interest is allowed from the date when the infringer would have paid royalty, if licensed, where the damages are measured by established royalty, and that rule is applicable to cases where damages are based on reasonable royalty.

6. PATENTS ⬅️318(5)—INFRINGEMENT—INTEREST.
Where damages for patent infringement were based on reasonable royalty for period of ten years, interest is allowable only from the end of the period, for it would be impossible to determine upon what sum the infringer should have paid interest during any one year.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. PATENTS ⬠319(3)—INFRINGEMENT—INCREASED DAMAGES.
    In a suit for infringement of patent, which had been declared invalid
by one tribunal before the infringement commenced, the trial court's de-
nial of treble or increased damages claimed by the holder of the patent
*held* not improper.

8. PATENTS ⬠318(1)—INFRINGEMENT—FOREIGN INFRINGEMENT.
    Where defendant manufactured one of the infringing elements and
shipped it abroad, and proof did not show that complainant had obtain-
ed the patent from the foreign country, complainant is not entitled to
royalties upon defendant's foreign sales; it appearing that defendant
sold none of the patented product abroad.

Appeal and Cross-Appeal from the District Court of the United
States for the Eastern Division of the Northern District of Illinois.

Suit by the Consolidated Rubber Tire Company and the Rubber Tire
Wheel Company against the B. F. Goodrich Company. From the
decree (237 Fed. 893), which was for part only of the relief sought,
defendant appeals and complainants cross-appeal. Modified and af-
firmed.

Suit for injunction to restrain infringement of Grant patent, No. 554,675,
and for accounting for infringement of such patent. The Grant patent was
issued February 18, 1896, and its validity was sustained by the Supreme Court
April 10, 1911. See Diamond Rubber Co. v. Consolidated Rubber Tire Co.,
220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527. This patent traveled a rocky
road, its validity being constantly questioned; no less than 15 courts being
required to pass upon its validity. It was twice held invalid (Goodyear Tire
& Rubber Co. v. Rubber Tire Wheel Co., 116 Fed. 363, 53 C. C. A. 583; Rubber
Tire Wheel Co. v. Victor Rubber Tire Co., 123 Fed. 85, 59 C. C. A. 215); both
decisions being by courts in the Sixth circuit, where several large rubber man-
ufacturing companies were located. In all other suits, the patent was sus-
tained. In addition to this litigation over its validity, the scope of the pat-
ent was passed upon by 17 courts. We are, perhaps, at present concerned
only in one, the decision of the United States Supreme Court. Woodward
Co. v. Hurd, 232 U. S. 428, 34 Sup. Ct. 409, 58 L. Ed. 670. In various account-
ings for the infringement of this patent, appellee has secured favorable de-
crees in 5 different courts, to which reference will be made later. Little is
left undecided, but each suit presents somewhat different facts.

This history to a certain degree bears upon the amount of damages that
should be allowed in this suit. The asserted doubt surrounding its validity
affected the sum which the master found to be the "reasonable royalty" up-
on which the decree is predicated. The master fixed the same sum per pound
of rubber manufactured by the infringer as was fixed by the court in the opin-
ions reported in Consolidated Rubber Tire Co. v. Diamond Rubber Company
of New York, 226 Fed. 455 (approved by the Circuit Court of Appeals in 232
Fed. 475, 146 C. C. A. 469), and 232 Fed. 508. The opinion of the District
Judge, approving the report of the master in this suit, appears in 237 Fed.
893. Appellant by this decree was required to pay as damages the sum of
$262,298.95, with interest from the date of the master's report.

The suit was begun August 21, 1908. Because of the pendency in the
Supreme Court of the United States of litigation between appellee and the
Diamond Rubber Company of New York, involving similar issues, the suit
was not pressed for trial until after the validity of the patent was deter-
mined by that court. Thereafter this suit was dismissed by the District Court
(195 Fed. 764), but later sustained by this court (202 Fed. 1021, 120 C. C. A.
663). The issues were then referred to a master, who took much testimony
and made the findings upon which this decree is predicated. 237 Fed. 893.

Both parties have appealed. The B. F. Goodrich Company, herein referred
to as appellant, is aggrieved because a reasonable royalty was fixed at 5
cents per pound on all rubber manufactured and sold in the United States.

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Its contention is that 2 cents per pound would be a liberal allowance. Plaintiffs in the court below, herein called appellees, complain for several reasons: (a) They assert that 10 cents per pound fairly represents the reasonable royalty. (b) They ask interest upon damages from date of infringement. (c) They ask for increased damages under sections 9464, 9467, U. S. Comp. Stat. 1916, because of the willful and aggravated character of the infringement. (d) They ask that royalty be figured on the 1,909,000 pounds of rubber manufactured by appellant and sold abroad.

Infringement extended from June, 1902, excepting for one year (when license was obtained), down to March 30, 1912. During this period appellant manufactured and sold 7,416,176 pounds of Grant rubber tires, of which 242,-770 pounds were sold under license, and 1,909,000 pounds were sold abroad. During this same period, appellant's total business amounted to $127,404,644, of which $3,433,133 came from making and selling Grant tires. During this total period its net profits were $19,339,202.

The master's report is full and complete and evidences much study. While too long to be set forth in full, it is in its entirety a most persuasive statement. We quote a few of the findings and conclusions:

"I find as a conclusion of fact: That the profits, or the approximate profits, made by the Goodrich Company on the manufacture and sale of Grant tires, is not disclosed by any of the three accounts already mentioned. The conclusions shown in all of said accounts are based on averages, apportionments, estimates, and assumptions to such an extent, and costs, expenses, credits, and profits were so handled, that such accounts are of no real value as guides in arriving at profits made by the defendant on Grant tires. That owing to the confusion and intermingling in manufacturing and selling of Grant tires with the other products of defendant's factory, and the manner in which the books and records of the business were kept, it is impossible to determine with approximate or reasonable accuracy the profits made on Grant tires during the accounting period.    *    *    *

"I find as a conclusion of fact that, considering the nature of the invention of the Grant patent, its utility and advantages, and the fact that considerable number of licenses were granted, none of them carrying a lower rate of royalty than 5 cents a pound on the rubber tire made and sold, and some carrying a higher rate, at the time the Goodrich Company began to infringe, 5 cents a pound on the rubber tires manufactured and sold by the defendant would have been a reasonable royalty for the Goodrich Company to have paid."

### Findings of Law.

"It appears from the findings of fact that 7,739,749 pounds of rubber tire were manufactured and sold by the Goodrich Company in this country and abroad during the accounting period; that of this amount 1,909,000 pounds were sold abroad, and 242,770 pounds were sold in this country between August 28, 1903, and August 28, 1904, the period during which the pooling agreement was in force. Of the amount sold abroad, 1,115,852 pounds were sold in England.

"I find as a matter of law that 5 cents a pound on the rubber tire manufactured and sold in this country would have been a reasonable royalty at the time the defendant commenced to infringe, and that it would have continued to be a reasonable royalty throughout the accounting period.

"I find that the complainants are entitled to recover of the defendant $262,-298.95 as damages, based on a reasonable royalty at the rate of 5 cents a pound on 5,245,979 pounds of rubber tire sold in this country (Dowagiac v. Minnesota, 235 U. S. 641 [35 Sup. Ct. 221, 59 L. Ed. 398]; Frumentum v. Lauhoff, 216 Fed. 610 [132 C. C. A. 614]; Bemis v. Brill, 200 Fed. 749 [119 C. C. A. 229]; that the complainants are not entitled to recover anything as damages on account of the rubber tire manufactured and sold abroad (Bullock v. Westinghouse, 129 Fed. 105 [63 C. C. A. 607]; Goodyear v. Rubber Tire Wheel Co. [C. C.] 164 Fed. 869; Rushmore v. Manhattan [C. C.] 170 Fed. 188).    *    *    *

"Findings of fact have been made upon which profits may be computed on the principle of apportionment, and this method has met the approval of courts in cases where no separate account was kept of the infringing trans-

actions and no other satisfactory method could be found by which to measure profits. The Tremolo Patent, 23 Wall. 518 [23 L. Ed. 97]; Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566; Corbin v. Taussig [C. C.] 137 Fed. 151. I have chosen to recommend that compensation be awarded in this case on the basis of reasonable royalty, believing that, in view of the number of infringers that entered the field soon after May 6, 1902, when the decision of the Circuit Court of Appeals of the Sixth Circuit was rendered holding the patent invalid, and at about the time the Goodrich Company became an infringer, the ends of justice will be better served by awarding damages based on a reasonable royalty than by awarding profits based on the theory of apportionment."

Prior to becoming an infringer, appellant made these tires exclusively for appellee, and became acquainted with appellees' business and customers, and it is claimed that, when appellant turned infringer, it took advantage of its knowledge thus acquired and appropriated the business. There was some evidence tending to show the net profit to appellant on this solid rubber tire branch of its business, but intelligent conclusions cannot be drawn therefrom. Appellant's expert accountants made three different reports, no one of which tallied with the other. Its final position seems to be that extreme doubt exists as to whether the solid rubber tire business was not conducted at a loss. Appellees manufactured solid rubber tires under the Grant patent, and it claims that its manufacturing business showed a profit per pound of 6.7 cents.

There was much evidence received tending or intending to establish a "reasonable royalty." It appeared that from 1896 to 1902 the patentee granted many licenses, numbering over 200, wherein a fixed royalty was disclosed. It appeared that at first the royalty was fixed at 10 cents per pound, but after two or three years it was raised to 20 cents per pound, and this sum was continued for four or five years. There were privileges granted and restrictions imposed upon the licensees, so that the persuasive character of these figures is impaired. After May 2, 1902, when Judge Lurton declared the patent invalid, the business became demoralized, and licenses were no longer sought, and royalty was no longer paid. Various companies thereafter, on August 28, 1903, entered a pooling agreement based on the manufacture of the patented article, and provided for pooling half of the royalties, limiting the production, raising the price, and fixing the royalty at 2 per cent. There was at this time great uncertainty as to the validity of the patent, and the pooling agreement expired in a year. This pooling agreement was at first held invalid, as contrary to public policy, but upon appeal it was upheld. A further statement of the facts will appear in the opinion.

Charles Neave, of New York City, and Samuel E. Hibben, of Chicago, Ill., for appellant.

Charles W. Stapleton, of New York City, for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge (after stating the facts as above). The two important questions that must first be determined are: (a) Is there sufficient evidence in the record to justify the adoption of a reasonable royalty as the basis for recovery? (b) If this question be answered in the affirmative, is 5 cents per pound a reasonable royalty?

[1-3] While the learned counsel for appellant does not dispute the court's right to apply the doctrine of reasonable royalty, where there is sufficient evidence to justify it (Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398), contention is made that in this case there is an utter absence of competent evidence to make it possible to reach an intelligent conclusion as to what would be a reasonable royalty. We are convinced that there is evidence in this case that justified the court in its determination to meas-

ure appellees' damages on the basis of a reasonable royalty. This evidence will be but briefly alluded to.

(a) There was evidence of established royalty for six years prior to appellant's infringement. These license contracts contained many added agreements, some of which detracted from, while others added to, the rights of the licensees as such. None of these agreements, excepting one, hereinafter discussed and made shortly after the Lurton decision, fixed a royalty lower than 5 cents per pound. Some were as high as 20 cents per pound. The exception, the so-called pooling agreement, which was obviously made in view of the then existing uncertainty as to the validity of the patent, may also well be considered, although it is no more conclusive than the licenses fixed prior to the Lurton decision.

(b) The extent of the business and the success of the patent, and its widespread and well-nigh universal use, clearly appears and has a bearing on the question. There is no doubt but that this Grant tire dominated the trade. Immediately after the patent was issued it went into widespread use, and has continued even to the present day as a most satisfactory response to the solid rubber tire demand.

(c) Appellees' business, though conducted in competition with the large and successful rubber manufacturing companies, and at a time when it was unprepared to meet this competition, showed a profit of 6.7 cents per pound.

(d) On account of appellant's failure to so keep its books as to enable the court to ascertain what its profits were, notwithstanding this suit for damages was pending, it becomes necessary, if a reasonable basis may be found, to adopt another basis for computation that will adequately and fairly compensate the patentee.

(e) The Circuit Court of Appeals for the Second Circuit, in the case of Appellees v. Diamond Rubber Co., 232 Fed. 475, 146 C. C. A. 469 (affirming 226 Fed. 455), after reviewing evidence very similar to the proof in this case, affirmed a finding that 5 cents per pound is a fair sum that the infringer should pay for manufacturing and selling this solid rubber tire in violation of the rights of the patentee.

Is there evidence to support the master's findings? The master saw and heard the witnesses, and in some respects was in far better position to determine this question of fact than the reviewing court. Numerous witnesses testified as expert accountants for the appellant. Three different reports are furnished by it, which differ materially and radically, and the existence of these differing and conflicting reports might well make the credibility of appellant's witnesses a material factor in determining the basis of computation.

It is well-nigh inconceivable that this large and successful business concern should engage in this unlawful business, year after year, in defiance of the patentee's rights, with a suit for damages pending, if the business was conducted at a loss. It is highly improbable that this concern, with its record of success and its stupendous figures of net profits for ten years, would have conducted, as a part of that most successful business, a branch of no inconsiderable size that was run at a loss. Nor should appellees be compelled to go forth without relief, if there be any

other reasonable basis for measuring damages, simply because appellant has so kept its books that the court, as the master found, is unable to accept its figures, and unable to determine from these books the profit actually enjoyed. Likewise in this case appellees should not be compelled to accept their own profits as the basis for determining a reasonable royalty. Originally the owner of the patent did not contemplate manufacturing all its solid rubber tires. To obtain its output it made an exclusive contract with appellant. When the latter company turned infringer, appellees were in no position to engage in the manufacturing business and conduct it at a profit. They did not, like the appellant and other infringers, have unlimited capital and an established business, extending to every corner of the United States, to support their venture. It is worthy of notice that appellees' profit of 6.7 cents per pound was based on its business during the first half of this period. During the last four or five years there is evidence tending to show appellees' profits from the manufacture of this solid rubber tire exceeded 10 cents per pound. While it should be added that the reliability of these figures is vigorously assailed by appellant, we are convinced that the reasonable royalty varied somewhat during this period due to the holdings of the courts.

The royalty fixed in the first licenses was likewise not controlling, because after the Lurton decision the patent was not as valuable as before. The same royalties were no longer obtainable. In fact, after this decision the 2 per cent. royalty found in the pooling agreement is fully as fair as the price that had been fixed before there was any successful attack upon the patent. But the master was covering, not the period beginning with 1902 and ending in 1903, but the entire period of ten years, from 1902 to 1912. If the 2 per cent. royalty represented the fair royalty in 1903, well might the appellees argue that after 5 other judges, representing different courts, had held the patent valid, the original price of 20 cents per pound was more nearly the sum a licensee should pay for the right to manufacture and sell this product. By 1907 this patent had been sustained in at least 8 different courts. After that date could it be said that doubt as to its validity existed?

Again, the decree in the case of Appellees v. Diamond Rubber Co., supra, is entitled to much weight. In that case it was the identical issue as here presented that was up for determination. It may be that the facts were not exactly similar to those here presented, but an examination of the opinion confirms the impression that there was but little or no difference in the proof. We do not hesitate to say that the findings of the District Court, affirmed by the Circuit Court of Appeals for the Second Circuit, as to a reasonable royalty in a suit involving the same identical patent, covering practically the same period of time, is entitled to much weight and consideration by this court.

Difficulty in determining the reasonable royalty does not alone bar the court from adopting this rule. Dowagiac Mfg. Co. v. Minnesota Plow Co., supra. Such a method of measuring damages doubtless widens the field of investigation, and makes possible a longer hearing; but if the fact determinative of the question here in issue is thereby more certainly established, and more satisfactorily reached, good reason exists for applying the rule.

[4] *Amount.*—Nor can we say that the evidence does not support the finding that 5 cents per pound is a reasonable royalty. The most serious objections to the allowance of the 5 cents per pound as the measure of damages in this case are: (a) The effect of the Lurton decision upon the value of the patent, together with the right acquired under that decision by the Goodyear Rubber Company, a large and formidable competitor in the rubber business during the period under consideration. (b) The infringement was merely for one of the elements that went to make up the patent.

Both of these objections present serious questions. There can be no doubt but what the reasonable royalty was affected by the fact that a large competitor, the business of which extended to every corner of the United States, was free to manufacture and sell the patented article. Likewise, if it were commonly understood among the trade (both manufacturers and retailers) that the patent was invalid, or even that there was grave doubt as to its validity, the royalty would be reduced. Such a reputation would invite infringement, with a resulting demoralization in the price. These facts we have carefully considered in determining whether the sum fixed by the master is reasonably well supported by the evidence. Certainly, if there was not present conclusive proof of other facts, this argument would doubtless lead us to a modification of the decree. But this was no ordinary patent, if we judge its success by the extent to which it shortly occupied the field for which it was conceived. Most unusual is the indorsement that it received. The following quotations are but a few of the tributes:

"Few patents have received such immediate and well-nigh unanimous recognition. It is the standard rubber tire of today." "It is improbable that Grant's construction will be improved upon in our day." "It has been accepted as the termination of the struggle for a completely successful tire." "The Grant tire immediately established, and has ever since maintained, its supremacy over all other rubber tires, and has been commercially successful, while they have been failures."

Surely much of the real doubt and uncertainty disappeared by 1907. For the last five years of the period in question, nothing but the great strength and tenacity of a few large manufacturing companies marred appellees' control of a great industry that was the product of the genius of the patentee. Nor does appellant occupy an enviable position in first helping to demoralize the trade, and then asserting that by reason of such demoralization, appellees' damages should be merely nominal.

As to the other objection, that the infringement was of a single element of a combination patent, and therefore the master erred in holding appellant liable for the reasonable royalty of the entire patent, we conclude the contention fails for want of support in fact. The master's finding on this subject is:

"I find as a conclusion of fact that * * * 5 cents per pound on the rubber tires manufactured and sold by the defendant would have been reasonable royalty * * * for the company to have paid."

We have considered the character of the other elements, the state of the proof as to the possible division of the royalty on the entire patented article, as well as the other facts bearing upon this question, and

conclude that the master was fully apprised of the need of considering this argument, and gave it due weight, and that his ultimate finding of 5 cents per pound, not on the patented article, but on the rubber tires, finds ample support in the evidence.

[5, 6] *Interest.*—No interest was allowed, excepting from the date of the report of the master. Appellant contends that the court properly refused to allow interest beyond the date of such report, while appellee seeks to recover interest from the time the royalty should have been paid, had appellant been operating under a license. It is now recognized that, where profits are awarded, interest is not allowed until the amount has been judicially determined. On the other hand, interest is allowed from the date when infringer would have paid royalty, if licensed, where the damages are measured by established royalty. It is asserted, however, that the rule respecting interest is not well established in that class of cases where damages are based upon "reasonable royalty."

We see no valid reason for withholding interest where the damages are based upon a reasonable royalty. In fact, precedent, and not the logic of the situation (Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664), is all that prevents the allowance of interest in case of damages based on the infringer's profits. The allowance of interest, and the reasons for such allowance or rejection, have been announced in innumerable decisions where questions analogous in character to patent infringement suits have been under consideration. Such decisions are instructive and in the absence of other authorities may well be accepted as conclusive on the question. In this case the reasonable royalty is fixed, not for a single year, but for a period of ten years, and represents the average royalty for that entire period. It is therefore impossible to determine upon what sum appellant should have paid interest on this basis during any one year. We conclude, however, that interest should run on the amount thus found due from the end of the period, to wit, March 30, 1912.

[7] *Treble or Increased Damages.*—The trial judge who had this matter under consideration, notwithstanding all the aggravating circumstances under which the infringement occurred, refused to increase the compensatory damages found by him. For refusing to allow increased damages, appellees assign error. Unfortunately, the argument of the appellant to the effect that the trial judge saw and heard the witnesses, and is therefore in closer touch with the facts than the appellate court, fails, because of the reference, which resulted in the oral testimony being presented to the master. The trial judge neither saw nor heard the witnesses.

There were many circumstances in connection with appellant's infringement that indicated willfulness, malice, and a wanton disregard of the rights of the patentee. We believe that there is ample justification for the allowance of increased damages in this suit. We are also, however, impressed with the fact that at an early day in the history of this patent, the Circuit Court of Appeals for the Sixth Circuit declared it invalid, and this adjudication was naturally accepted by the manufacturers in that circuit as final.

It is, of course, the rule that, if the manufacturer honestly believed that he had a right to manufacture this rubber tire, he should not be mulcted in punitive damages. We are not willing to announce any hard and fast rule that good faith exists because a favorable decision in some court is obtained, yet we are not so clearly convinced that this same good faith is absent in this case as to warrant the imposition of additional damages. In the Diamond Rubber Co. Case, supra, additional damages in the sum of $50,000 were inserted and the Court of Appeals sustained the decree. In this case we have the benefit of the conclusion of the learned District Judge, who gave the matter careful consideration and his opinion is entitled to much weight. We are unwilling to disturb his decision on this phase of the case.

[8] *Foreign Sales.*—Appellees contend that they should receive royalties upon the foreign sales made by appellant. We can dispose of this contention without considering the legal propositions advanced in support of it. Appellant did not sell any patented product abroad. It sold merely one element in appellee's patent. No infringement is shown by reason of the fact that appellant manufactured one of the infringing elements and shipped it abroad.

It is contended that appellee secured a patent in England; but there is no proof in the record to show what patent was there obtained, nor when it was granted. We conclude, therefore, that the court properly refused to allow royalties on these foreign sales.

The decree is modified, by adding interest at the rate of 5 per cent. from the 30th day of March, 1912, to the amount fixed by the District Court as damages, and, as so modified, is affirmed. Appellees shall recover their costs in this court.