MALLEABLE IRON RANGE CO. v. LEE.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1920.)

No. 2687.

1. PATENTS ⟺319(1)—REASONABLE ROYALTY MAY BE BASIS OF DAMAGES FOR INFRINGEMENT.
    That there is no established royalty for the right to manufacture and sell a patented device does not preclude a court from fixing a reasonable royalty as the basis of damages for infringement, especially where, owing to the mingling of the different parts of defendant's business it is impossible to approximate its profits from the infringement.

2. PATENTS ⟺319(1)—THE "STANDARD OF COMPARISON RULE" HELD PROPERLY REJECTED AS BASIS OF RECOVERY FOR INFRINGEMENT.
    The "standard of comparison rule" held properly rejected as a basis of recovery from an infringer.

3. PATENTS ⟺319(3)—PUNITIVE DAMAGES ALLOWED AGAINST INFRINGER.
    The award of punitive damages against an infringer held, under the evidence, within the discretion of the trial court.

4. PATENTS ⟺319(4)—INTEREST ALLOWED ON DAMAGES FOR INFRINGEMENT.
    Complainant in a suit for infringement held, upon the facts in this case, entitled to interest on the amount of damages recovered from the end of the infringing period.

5. APPEAL AND ERROR ⟺766—PRESENTING TO COURT OFFER OF COMPROMISE IMPROPER.
    Inclusion in brief of counsel of a letter from opposing counsel, written after decree and offering a compromise, held improper.

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit in equity by Fred E. Lee, administrator of the estate of Arthur K. Beckwith, deceased, against the Malleable Iron Range Company. Decree for complainant, and defendant appeals. Modified and affirmed.

For opinion below, see 247 Fed. 795.

Certiorari denied 251 U. S. 562, 40 Sup. Ct. 342, 64 L. Ed. ——.

Thomas A. Banning and John S. Miller, both of Chicago, Ill., for appellant.

Fred L. Chappell and Harry C. Howard, both of Kalamazoo, Mich., for appellee.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. By the terms of the decree appealed from appellant, on an accounting for infringing patent No. 787,425, to Arthur K. Beckwith, upheld by the District Court (174 Fed. 1001), and by this court (189 Fed. 74, 110 C. C. A. 638), was ordered to pay $78,816.67 damages, $12,282.26 interest, $15,763.33 punitive damages, or a total of $106,862.26, besides the costs of the suit. An asserted lack of evidence to support the findings is the chief complaint of appellant.

The patent in suit covers a right-hand contact reservoir for a kitchen range. While reservoirs attachable to kitchen ranges were old in 1903, when the patented article first made its appearance, it is claimed that the then existing types were unsatisfactory, and the patented article filled a long-felt need. The reservoir of the type under consideration went into extensive use, and its popularity, it is asserted, helped to sell the range to which it was attached. This is denied by appellant. But the master's finding thereon, herewith set forth, is, we think, supported by the evidence. He found:

"This is the essential feature of the Beckwith patent, a more efficient heating of water, and I believe a very essential element in effecting the sale of defendant's ranges and building up its prosperous business. * * * It is impossible to conclude that the infringing combination had no share in creating the profits of this business. On the contrary, the evidence taken before the master confirms the conclusion reached by Judge Quarles, wherein, after tracing the growth of this business, he says: 'This enormous increase in the business is attributed largely to the popularity of the right-hand reservoir of the patent in suit, which practically superseded the structure theretofore built by the complainant.'"

Appellant, through one of its customers, learned of the improvement appearing on the Beckwith range, and thereafter copied it. In the face of notices to cease infringing and threats of suit, it continued its manufacture and sale of infringing reservoirs. This continued transgression on its part extended for a period of six years,

from April, 1905, to April, 1911, when the injunctional order, affirmed by this court, made further trespass impossible. During this period appellant manufactured and sold 47,290 infringing reservoirs, most of them in connection with ranges. Its accounts showed receipts from this source alone of $299,704.08. During this same period, upon a capitalization of $100,000, its profits from the manufacture and sale of its ranges and reservoirs were $737,374.36. Its total sales from ranges, reservoirs, repairs, etc., aggregated $4,219,093.00.

Appellant contends, however, that notwithstanding these figures it suffered a loss of $1,399.05 upon its total reservoir business for this period. It submitted to the master an elaborate statement, prepared by an expert accountant, to substantiate this statement. The statement is necessarily based in part upon estimates. The business was conducted as an entirety. There was a commingling and confusion of range and reservoir business. It was naturally and necessarily so conducted. The same salesmen sold both products. The same factory housed both businesses. The same employés worked upon both products. The ranges were fitted with attachments to receive the reservoirs. Seldom was there a sale of one without the other. To satisfactorily separate the reservoir from the balance of the business, or to apportion the profits with exact precision is therefore beset with difficulties.

The master pointed out numerous errors in the statement as presented, and then restated the account. Taking appellant's own statement as a basis for his deductions, he found a profit of $47,356.18 upon the reservoir business. To this appellee now insists there should be added the sum of $17,000.00, due to a saving in material.

But the master, in view of all the circumstances, concluded to use, as the basis for computation, a reasonable royalty. This he fixed at $1.66⅔ per reservoir, which conclusion met with the approval of the District Judge, who, however, contrary to the finding and recommendation of the master, added 20 per cent. as punitive damages.

[1] *Reasonable Royalty.*—Was a reasonable royalty the proper basis for determining appellee's damages? Was there evidence to support a finding of $1.66⅔ per reservoir as a reasonable royalty? Both questions appellant insists should be answered in the negative.

It was for the court to determine which method of computation would most reliably measure the plaintiff's recovery, recognizing that reasonable approximation, rather than mathematical exactness, was all that could be expected. It was not required to reject the reasonable royalty basis merely because the patentee had granted no licenses therefor and fixed no royalty. The Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398. In this case the court says:

"But, as the patent had been kept a close monopoly, there was no established royalty. In that situation it was permissible to show the value by proving what would have been a reasonable royalty, considering the nature of the invention, its utility and advantages, and the extent of the use involved. Not improbably such proof was more difficult to produce, but it was quite as admissible as that of an established royalty. In Suffolk Co. v. Hayden, 3 Wall. 315, 320 [18 L. Ed. 76], where a like situation was presented, this court

said that 'in order to get at a fair measure of damages, or even an approximation of it, general evidence must necessarily be resorted to.' See, also, Packet Co. v. Sickles, 19 Wall. 611, 617 [22 L. Ed. 203]; Root v. Railway Co., 105 U. S. 189, 198 [26 L. Ed. 975]. And in many cases in the other Federal court the damages have been assessed upon proof of a reasonable royalty. The practice is illustrated by the following extract from the opinion in Hunt v. Cassiday, 12 C. C. A. 316, 318, 64 Fed. Rep. 585, 587: 'The plaintiff was clearly entitled to damages for the infringement. If there had been an established royalty the jury could have taken that sum as the measure of damages. In the absence of such royalty, and in the absence of proof of lost sales or injury by competition, the only measure of damages was such sum as, under all the circumstances, would have been a reasonable royalty for the defendant to have paid. This amount it was the province of the jury to determine. In so doing they did not make a contract for the parties, but found a measure of damages.' True, some courts have regarded Coupe v. Royer, 155 U. S. 565 [15 Sup. Ct. 199, 39 L. Ed. 263], as impliedly holding that this practice was not permissible, but the decision does not admit of such an interpretation "

The court was favored with all of the evidence that could throw light upon this issue. It had before it all of the account books of appellant, all of the testimony obtainable as to the character of the invention, its utility, its practicability, its popularity, its advantages over other types of reservoirs, the extent of its use, its value as a factor in selling ranges, as well as all other determining elements that might well influence one in arriving at a correct conclusion. In addition thereto witnesses gave their expert opinion as to the sum that would fairly represent a reasonable royalty. Two such experts fixed this amount at from $1.50 to $2.00 per reservoir.

On the other hand, to take appellant's profits as disclosed by the restated account as the basis of recovery was far from satisfactory. The difficulty in determining what sum should represent the contribution made by the reservoir to the range business, as well as the confusion resulting from a commingling of the affairs of the two businesses, made any estimate of appellant's profit uncertain and unsatisfactory. We are, moreover, not convinced from our examination of all of the accounts that appellant suffered by the adoption of the reasonable royalty as a basis of computation. In other words, we are not persuaded that appellant's profits fairly and directly attributable to the reservoir business would not have exceeded the amount of the judgment exclusive of the punitive damages.

It appears that the average profit on all of the business conducted during the entire infringement period was 21.11 per cent. If that branch of the business protected against competition, save from appellee, showed no greater percentage of profit than the unprotected business, appellant would have been chargeable with $63,000.00 of profits. But it is obvious that any branch of business protected by a monopoly should show a greater margin of profit than the unprotected department of business and should be chargeable with a higher percentage of the profits; 21.11 per cent. would therefore not fairly represent the profit on the reservoir business. In addition thereto it appears, and the master so found, that the sales of appellant's ranges were due in part to the presence of the attached patented reservoir. There is some evidence in the record tending to fix this sum at $19,000.

It is unnecessary for us to determine on this appeal just what these

two last-named items aggregated. Certainly the figures are sufficient to justify us in questioning whether appellant has been aggrieved by the adoption of the basis chosen for the determination of the amount fixed in the decree.

[2] Complaint is also made because the court and the master both failed to apply the rule commonly known as "The Standard of Comparison Rule." While this rule may be applied with propriety in certain cases, it by no means follows that it should be adopted in all cases or in the instant case. Its application was urged upon the District Court, and good reasons were given for its rejection. We quote therefrom and adopt the views so expressed:

"Whatever may be the applicability of this standard of comparison rule to other situations, there ought to be at least hesitation in adopting it where profits have been figured and apportioned without its aid. The obvious danger of attempting to measure recovery, not by what the infringer as a manufacturer or seller in fact made as a manufacturer's and seller's profit on the particular combination, but by the gain, if any, as compared with what he would have made had he manufactured something which he might, but did not make—the obvious danger involved is this: It introduces a conjectural basis of evidence; it compels assumptions which are repugnant to the very purpose of giving relief to the patentee for the appropriation which the infringer for some reason chose, it compels comparison of what he actually did, as against a standard which he chose not to follow; it gives prominence to what, but for the invention, he might have done, thereby to get the measure or value of what, apparently, because of the invention, he did do. In other words, the realm of speculation is explored, collaterally inquired into, with the inevitable result of always finding some standard which will lead to nominal recoveries; a practical result of treating the infringement of appropriation as a mere fortuity, a mere accident of making a selection of one out of several equally desirable courses to pursue. In further consideration of this, let it be assumed that the very reservoirs suggested by the defendant as standards of comparison could have been made at precisely the same or at various costs; the infirmity of the rule—the injustice, I believe, of its attempted application—rests in the added hypothesis or assumption that, had any other been chosen, it would have achieved corresponding results in respect of the number of infringing reservoirs which the defendant in fact made and sold. In this way, although the whole manufacture and resulting trade may have been bottomed upon the actual and commercial merit of the appropriated invention, an infringer may still retain his gains and go acquit, except for nominal recovery, because he can show that he gained or saved or profited no more than his competitors in their manufacture and sales of 'what he would have been free to make and sell, but did not.' The proof may be overwhelming that the particular infringer, in the course of his manufacture and sale, not only met competition, but distanced it by creating a greater commercial favor for the infringing article; yet, so long as he can show that he made no more money than he would have made, had he followed the course of his competitors, he may retain his gains because this enables him to say that he made nothing out of the invention. It results in denial of gains by an infringer who is fortunate enough to have actual or possible competitors in the same general line, through whom and whose experience he can place before the court an hypothesis which, after all, enables him to travel in a circle on this matter of gains and profits. * * *

"The fallacy of attempting to apply the rule as urged by the defendant grows out of the assumption that, as between an unpatented and a patented structure, whether the latter be totally new or merely an improved structure, there is in the creation of profits upon manufacture and sale of the structures, respectively, a relation, such that points of agreement or points of difference, may be resorted to and, as such, exhibit in dollars and cents, attributability of the whole or parts of the profits to resemblances or differences. In my

judgment common experience forbids such an assumption. Let it be granted that in a certain sense, if it be shown that a profit of $2 per reservoir would have been possible on the South Bend range, and that, because a like profit was made by the defendant upon an infringing reservoir, the conclusion contended for was warranted; what will be the conclusion when once it appears that the defendant, not only chose not to make the South Bend reservoir, but made the Beckwith at a less profit, though, because of its acceptability, the volume of its business was fast tending to supersede every other 'open' style of range? Does not this show the nonrelevancy of the fact offered in evidence which can with equal force be pressed to establish the rule that no profits can ever be attributed to a patent?"

Upon the question of the sufficiency of the evidence to support the finding of $1.66⅔ per reservoir further observations are hardly necessary. While counsel for appellant attacks the qualifications of the experts who testified on this phase of the case, we think the objections were not well taken. It was for the trial court to determine the qualifications of these witnesses (Wigmore on Evidence, vol. 1, § 561), as well as the weight to be given to their testimony. Without such evidence we think the court was justified in fixing a reasonable royalty. When all of the facts are fully presented, why should not the court make the ultimate conclusion? It is doubtful if any witness was in as good a position to make this deduction as the master, who heard and saw all of the witnesses, who was fully informed as to all the facts, and who was enlightened by the argument of counsel.

[3] *Punitive Damages.*—The court, overruling the master, acting upon the authority given it by section 4921, R. S. (Comp. St. § 9467), awarded appellee punitive damages to the extent of 20 per cent. of $78,816.67. This is assigned as error. In disposing of this phase of the case the court said:

"It will be granted, I assume, that when once facts are brought to the attention of the court which bear pertinently upon the infringer's malicious or wanton conduct, not merely in litigation, but in respect of matters pertaining to infringement—conduct which may precede or which may concur with litigation—there is created a basis upon which the court, in its discretion, may exercise the conceded power. Therefore, in considering the five matters which are brought before the court by the master's report, I have no difficulty in concluding that a mere failure to cease infringement, likewise the exhibition of a pugnacious disposition in litigation, when standing alone, cannot ordinarily furnish a sufficient basis. But the facts found by the master—not to be assailed for the want of evidence to support them—which convict the defendant of a deliberate purpose to appropriate the invention, to appropriate that which [it was one of the first to recognize] 'had solved the problem of the right-hand reservoir.' Its course and conduct from the outset, in attempting to fortify itself in its appropriation; the act of seeking and persisting in its efforts to get a patent through its chief officer which embodied the essentials of Beckwith's construction coupled with some colorable changes; these facts furnish, in my judgment, ground for an appeal to the exercise of the power to increase damages, which cannot be ignored. Their recognition is called for, notwithstanding the presumptive good faith in following the advice of counsel respecting cessation of infringement, or like advice respecting vigorous defense of litigation. They are facts which at once subordinate the latter facts, and the color of good faith which is derived from advice of counsel cannot lessen or impair the efficacy of the other facts to condemn the defendant's conduct as involving a deliberate and willful purpose."

We agree with the foregoing statement that the facts called for the exercise of judicial discretion and we cannot say there was an abuse of

discretion. Upon this appeal we are not to determine this question as an original one, but simply to ascertain whether the District Judge abused the discretion which he was required to exercise. Appreciating that appellant's entire conduct was under examination from which the District Court was to determine the character of the infringement as well as the motive back of it, we are unable to say that error occurred in allowing this extra and commonly termed punitive damages.

Appellant, apparently for the first time, finally questions appellee's right to recover the entire amount fixed in the decree, basing the contention upon the asserted fact that Arthur K. Beckwith, the patentee, executed a license to the estate of P. D. Beckwith, Incorporated, and that the licensee and not the patentee was the manufacturer. In other words, it was claimed that the licensee under the circumstances was entitled to a part of the recovery. If this contention was adopted, it would seem that the court should order such other party to be brought into the litigation, so that its rights might be determined. But this we think is unnecessary, in view of our conclusion respecting the evidence on this issue. We are unable to find any evidence that justified the statement that a license had been granted to the estate of P. D. Beckwith, Incorporated, by Arthur K. Beckwith. Such an instrument had been executed and delivered to one Lee, but "to be held in escrow until such time as the suit might be concluded."

· [4] *Interest.*—The court allowed interest from the date of the master's report. Subsequent to this decision, this court announced its opinion in Goodrich Co. v. Consolidated Rubber Co., 251 Fed. 624, 163 C. C. A. 611, wherein the infringer was chargeable with interest from the end of the infringing period. We think the rule there announced applies to the facts in the present suit. By stipulation of the parties this question is presented with the assignments of error raised by appellant and is properly before us. Appellee is entitled to interest from April 18, 1911.

[5] In appellee's brief there is a reference to a letter from counsel for appellant, wherein an offer to pay a sum of money in settlement of the litigation was submitted. The amount so specified is larger than any amount appellant admits in this court is due appellee. Wherefore appellee argues the decree should be affirmed, and appellant's theory of nominal damages rejected. This letter was written after the decree had been entered in the District Court and was a carefully worded offer of compromise. It could not possibly have any bearing upon any issue presented on this appeal. It is needless to announce that we have given it no consideration in arriving at our conclusion. We are at a loss to understand why it should have been printed in the transcript and argument based thereon was improper.

The decree is modified, by adding to the amount fixed therein the interest upon $78,816.67 at 6 per cent. from April 18, 1911, to June 10, 1915, and, as so modified, is affirmed. Each party is to pay its own costs.